**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jaime FIGUEROA–SOTO,**
**Defendant–Appellant.**

**No. 90–10557.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1991.

Decided July 11, 1991.

---

is bound by an earlier arbitration decision that is not approved by a court or an administrative agency.

Before BEEZER, NOONAN and FERNANDEZ, Circuit Judges.

NOONAN, Circuit Judge:

Jaime Figueroa–Soto (Figueroa) makes an interlocutory appeal from an order of the district court holding that his federal prosecution for narcotics offenses does not place him in double jeopardy. We affirm.

## JURISDICTION

■ Jurisdiction for this interlocutory appeal from a ruling on double jeopardy lies with this court. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

## PROCEEDINGS

In December 1989 Figueroa was tried and convicted in Pima County Court, Arizona of conducting a criminal enterprise and of money laundering. In 1990 Figueroa was federally indicted and charged with 14 counts of possession of marijuana with intent to distribute; conspiracy to possess with intent to distribute; and a continuing criminal enterprise. The dates during which these crimes allegedly took place overlap with the dates of the crimes of which Figueroa was convicted in Arizona.

Figueroa moved to dismiss the federal prosecution on the grounds of double jeopardy. The district court held an evidentiary hearing, took testimony for three days and then dismissed the motion. Subsequently the district court ruled that the motion was frivolous and dilatory.

Figueroa appeals the dismissal of his motion.

## FACTS

The facts relevant to Figueroa's claim of double jeopardy were developed in the hearing before the district court. In summary, they. are as follow: On March 23, 1984 the Pima County Sheriff's Office called Childers and Wallace, two agents of the Drug Enforcement Agency (DEA), to a residence in Tucson, Arizona where marijuana had been discovered. The DEA agents seized approximately twenty tons of

Robert J. Hooker, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Tucson, Ariz., for defendant-appellant.

William R. Stevens, Jr., Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

marijuana and drug ledgers from this and another Tucson residence. Six persons were arrested, including one Guillermo Soto–Leal. Soto–Leal was subsequently convicted of federal offenses and sentenced to forty-five years in prison. The court informed him that if he cooperated with the federal government in giving information as to others in the organization, his sentence might be reduced. Soto–Leal agreed to cooperate and disclosed to the DEA agents that he was the bookkeeper of the Figueroa smuggling organization. He explained the ledgers and identified the people mentioned in the ledgers. Soto–Leal's family was placed in the Federal Witness Protection Program. His sentence was reduced to six years.

The DEA also investigated one Miguel Torres and found that he and his people had been responsible for transporting marijuana to the Tucson residence where the seizures had been made. In July 1986 Torres and his associates were convicted of federal narcotics offenses. The evidence against Torres as well as Soto's disclosures pointed to the ultimate responsibility of Figueroa. But in order to corroborate the evidence the DEA obtained warrants for wiretapping. The wiretapping went on from October to December 1987.

Meanwhile, in April 1987, two persons were murdered in Pima County. The Pima County Sheriff's Office believed that they were killed when they tried to collect money for the sale of drugs and that Figueroa had ordered the murders. Some of the conversations recorded by the federal wiretap related to this double homicide. Agents of the DEA began to work closely with the Sheriff's Homicide Detail and with Ken Peasley, the Pima County Prosecutor.

When Pima County detectives reached the point where they were ready to indict and arrest two persons (other than Figueroa) for the murders, the detectives and Peasley met with federal prosecutors, including AUSA Stevens. The federal position was that the arrest of the two murder suspects would cause Figueroa to flee to Mexico. The federal position was also that the federal government was not yet ready

to charge Figueroa, that it needed more time to get corroborating evidence. If Figueroa were now federally indicted, the Speedy Trial Act would not give the federal government the time to conduct the type of investigation needed. County Prosecutor Peasley indicted that he would be willing to take the drug case "and try to work the homicide as far as the narcotics case was also involved." The federal authorities agreed. As a result of these discussions, according to AUSU Stevens, "everything" that the DEA had "was brought to the state agencies, all intelligence, all ledgers, documents, everything was brought to the state to assist in the prosecution."

In May 1988 Figueroa was arrested by state officers. At the same time, his house was searched under a federal warrant and $8 million of his assets was seized under federal warrant. Pima County prepared to prosecute him. The Attorney General of Arizona joined the prosecution and was represented by John Davis. According to the federal government's brief on this appeal, DEA agents then worked under the supervision of County Prosecutor Peasley and State Prosecutor Davis. The United States Attorney's Office itself was not involved in the state prosecution.

The trial of Figueroa in the state court began in October 1989 and resulted in his conviction in December 1989. An officer of the Arizona Department of Public Safety, Gene Anderson, had conducted an investigation of Manuel Duarte, a customer of Figueroa's organization. Through Duarte, Figueroa allegedly supplied marijuana to one Thomas Tighe. One of Tighe's workers, James Swazey, had agreed to cooperate with the DEA. At the state trial Swazey testified against Figueroa, as did Soto, and Gene Anderson interpreted the ledgers found in the original arrest and testified about their connection with Figueroa. DEA Agent Roger Wallace sat with the state prosecutor at the prosecution table to assist the prosecutor and was the designated government witness to whom the sequestration rules did not apply.

During the state proceedings AUSA John Leonardo requested a stay of the federal

forfeiture action in order to prevent Figueroa from using that action as a means of gathering information that would be of help to him in the state prosecution. During the state prosecution John Davis discussed the case several times with AUSA Stevens. Either during the state trial or shortly thereafter Davis was appointed as a Special Assistant to the United States Attorney for the District of Arizona. Davis and AUSA Stevens are the prosecutors of Figueroa in the present case. Davis' appointment as a federal prosecutor states that Arizona is responsible for paying his salary. Gene Anderson, the state investigator, is the lead case agent for the federal prosecution.

## ANALYSIS

 That the United States can punish the same conduct already punished by one of the several states without violating the Double Jeopardy Clause was decisively established in *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). That decision was reached at a time when the Double Jeopardy Clause of the Constitution was held to apply only to proceedings by the federal government. Since that date the Double Jeopardy Clause has been applied to the states. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). But nothing in this extension of the Constitution changed the *Lanza* rule. The proposition that the state and federal governments may punish the same conduct has been reaffirmed. *See Heath v. Alabama*, 474 U.S. 82, 89, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

During the period when the question arose under the Due Process Clause rather than the Double Jeopardy Clause, the Supreme Court decided a case which, by analogy, is of great relevance here. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Although such cases are now analyzed under the Double Jeopardy Clause, the *Bartkus* case has retained its vitality. *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). Bartkus was tried and acquitted in a federal district court of robbing a federally insured savings and loan association in Cicero, Illinois. The federal authorities were highly displeased with the result, and the trial judge upbraided the jury for its verdict. Almost immediately after the trial the federal authorities went to the State's Attorney and invited him to prosecute Bartkus. Less than three weeks after his acquittal Bartkus was indicted by Illinois and was subsequently convicted and sentenced to life imprisonment by the state.

In furtherance of the state prosecution the AUSA who had prosecuted the federal case had summoned to his office a co-defendant of Bartkus who had confessed his part in the robbery and testified against Bartkus in the federal trial. The federal prosecutor asked the co-defendant if he would testify against Bartkus in the state trial, and he said that he would. Sentencing of this man and another co-defendant, who also testified against Bartkus in both trials, was postponed by the federal court until they had testified against Bartkus at the state trial.

The FBI was also put to work to strengthen the evidence which had not sufficed to convict Bartkus in the federal trial. An FBI agent uncovered a new witness who testified at the state trial that Bartkus had told him about his participation in the robbery while they were both in jail awaiting federal trials. There was no contact between this new witness and any agent of the state of Illinois until the morning of the state trial. What his testimony would be was known only through his arrangement with the FBI. Federal sentencing of this new witness for violation of the Mann Act was also postponed until he had testified against Bartkus at the state trial. The FBI agent also testified for the state in rebuttal of an alibi witness for Bartkus. And, over Bartkus' objection, the FBI agent remained in the state courtroom throughout the trial although other witnesses were excluded.

Writing for the Court and upholding Bartkus' conviction, Justice Frankfurter

said that the evidence established "that federal officials acted in cooperation with state authorities." Such collaboration was "the conventional practice between the two sets of prosecutors throughout the country." *Id.* at 123, 79 S.Ct. at 678. It did not offend due process of law. Justice Frankfurter added that the evidence did not show that the state "in bringing its prosecution was merely a tool of the federal authorities" and did not "sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Id.* at 123–24, 79 S.Ct. at 678.

The obiter dicta just quoted have been seized upon by criminal defendants like Figueroa in this case and argued to have created "a *Bartkus* exception." We have recognized that in theory such an exception does exist. *United States v. Bernhardt,* 831 F.2d 181, 182–83 (9th Cir.1987). As a practical matter, however, under the criteria established by *Bartkus* itself it is extremely difficult and highly unusual to prove that a prosecution by one government is a tool, a sham or a cover for the other government. A comparison of the circumstances in *Bartkus* and the present case bearing on the federal-state collusion shows how difficult the proof is:

| | *Bartkus* | *Figueroa* |
|---|---|---|
| Initiation of prosecution by one government at the request of other authorities | State prosecutes at request of federal authorities | State prosecutes at request of federal authorities |
| Federal agents used to assist state prosecution, including testifying at state prosecution | FBI Agent | DEA Agents |
| Presence of federal agent at state prosecutor's table | FBI Agent | DEA Agent |
| Federal provision of evidence to state prosecutor | Evidence presented by federal authorities in federal trial again presented in state trial | Evidence federally gathered provided to state before state trial |
| Federal sentencing power used to control state witnesses | Three prosecution witnesses' sentences so manipulated | At least Soto's sentence so used |
| Federal agent prepares key state witnesses | FBI agent prepares state witnesses | DEA agents contact state witnesses |
| Stay of federal forfeiture proceeding so as not to prejudice state prosecution | Not relevant | Forfeiture stayed |
| State prosecutor designated as special assistant to United States Attorney | Not relevant | Designation made |
| State agent used in federal trial | Not relevant | State agent is to be used |
| Federal prosecutor's salary paid by state | Not relevant | Davis' salary as federal prosecutor paid by Arizona |

A review of these factors shows that the only differences between *Bartkus* and the present case are the stay of the federal forfeiture proceeding; the designation of Davis as a special assistant to the United States Attorney; the payment of Davis' salary by Arizona; and the proposed use of Anderson in the federal trial. None of these differences is significant. That federal proceedings should be stayed in order to help the state was already approved in *Bartkus* as to the sentencing of the state witnesses; the stay of the forfeiture proceedings was less important to the state than the control exercised over the witnesses through such federal stay of sentencing. The designation of Davis did not convert him into a federal official for all purposes. He could wear two hats. His primary role in the state prosecution as the state prosecutor was not affected by a federal status that became significant only when he took on the federal prosecution of Figueroa. That his salary should be paid by the state while he prosecutes Figueroa federally does not change the fact that Davis now proceeds under federal authority and acts as a duly appointed federal official. The use of Anderson in the federal trial is no more significant than the use of the FBI agent in Bartkus' state trial.

In *Bartkus* the federal government after losing its prosecution colluded closely with the state in securing a conviction. With the rhetorical bite that sometimes characterizes a dissent, Justice Brennan described what happened in these

terms: "[T]he federal effort which failed in the federal courthouse was renewed a second time in the state courthouse across the street." *Bartkus*, 359 U.S. at 169, 79 S.Ct. at 705 (dissenting opinion). Although *Bartkus* was decided under the Due Process Clause, it affords a potent analogy here. In the present case a state prosecution which succeeded has been followed by a federal prosecution for many of the same acts. What the dissenters in *Bartkus* refused to recognize and what Figueroa misses in his appeal is that the same acts may be punished by two sovereigns if they offend the laws of both sovereigns. Due process of law is not violated when the defendant has violated the narcotics laws of the state and of the nation and is prosecuted for the same acts by both state and nation. *United States v. Lanza, supra.* Double jeopardy is not incurred by such serial prosecutions. *See United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). As *Bartkus* makes plain, there may be very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns. None of this close collaboration amounts to one government being the other's "tool" or providing a "sham" or "cover." Collaboration between state and federal authorities is "the conventional practice." 359 U.S. at 123, 79 S.Ct. at 678. No constitutional barrier exists to this norm of cooperative effort.

The district court found Figueroa's motion to dismiss frivolous and dilatory. That ruling is not before us on this appeal. We, therefore, have no occasion to decide whether the rule established in *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (en banc) should be applied in this circuit. *See United States v. Claiborne*, 727 F.2d 842, 850–51 (9th Cir.) *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984).

AFFIRMED.