**UNITED STATES of America, Plaintiff,**

v.

**David Neel SCHOLZ, Defendant.**

**No. CR–N–94–0075–ECR.**

United States District Court,
D. Nevada.

Sept. 29, 1995.

Ronald C. Rachow, Asst. U.S. Atty., Reno, NV, for plaintiff.

Peter Clemmens Wetherall, Robert R. Hager, Reno, NV, for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

The court now rules on Defendant David Scholz' Motion to Supplement Motion to Dismiss and Motion for Reconsideration (Doc. # 363). Defendant argues (1) that the federal prosecution on narcotics charges violates his constitutional right to be free from double jeopardy for the same offense, and (2) that the United States breached its agreement not to prosecute him in exchange for infor- mation. This court has previously ruled from the bench that Mr. Scholz had not sustained the burden of proving the existence of such an agreement (Hearing on Defendant's Motion to Dismiss, June 5, 1995, Doc. # 76, page 99). Mr. Scholz had moved this court's reconsideration of that ruling (Motion for Reconsideration, Doc. # 363). This court denied reconsideration of that ruling (Doc. # 378). The issue need not be revisited a third time.

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The Defendant in this case, David Scholz, argues that his federal prosecution on drug trafficking charges, following as it does an earlier drug prosecution by the State of Nevada, is barred by the Double Jeopardy Clause.

The issue is whether the federal prosecution is for the "same offense" as that covered by the state prosecution. The United States Supreme Court recently renewed its allegiance to the "same offense" test originally announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Court read *Blockburger* to require that the Double Jeopardy Clause be applied to bar new criminal prosecution where each element of the offense charged appeared in both prior and present prosecutions. *Dixon*, —— U.S. at ——, 113 S.Ct. at 2856. In other words, a second criminal prosecution of the same defendant for the same conduct does not violate the Double Jeopardy Clause if the offense charged in the second prosecution requires proof of some element not required in the first prosecution.

Here, Mr. Scholz was prosecuted first by the State of Nevada for possession of marijuana with intent to sell. Subsequently the United States charged Mr. Scholz with violations of a number of federal criminal narcotics statutes. In addressing Mr. Scholz's Double Jeopardy claim, the respective statutes must be analyzed under the *Blockburger* "same offense" test.

486

The Nevada statute, Nev.Rev.Stat. § 453.337 (1991), under which Mr. Scholz was prosecuted in the state court, requires proof beyond a reasonable doubt that the defendant had dominion and control over the controlled substance and knowledge of its presence and its illegal nature, *Sanders v. State,* 110 Nev. 434, 874 P.2d 1239 (1994), and that the defendant possessed the substance in an amount sufficient for sale or consumption as a controlled substance with the specific intent to sell the same, *California Jury Instructions, Criminal* § 12.01 (5th ed., 1993 Rev.).

The defendant pled guilty to Counts 1 and 20 of the federal indictment (*see* Presentence Investigation Report and Memorandum of Plea Agreement). Count 1 charged violation of 21 U.S.C. § 846 and § 841(a)(1) and (b)(1)(A)(vii) (conspiracy to manufacture and to distribute 1,000 or more marijuana plants) and 18 U.S.C. § 2 (aiding and abetting). Count 20 charged violation of 21 U.S.C. § 856(a)(1) (maintaining a place for manufacture or distribution of a controlled substance) and 18 U.S.C. § 2 (aiding and abetting).

Therefore, as to Count 1 of the federal indictment, there is no double jeopardy; Count 1 requires proof of an element not required by the state statute under which Mr. Scholz was prosecuted in the state court, namely, the existence of a conspiracy.

Although the elements of the state statute prohibiting possession with intent to sell, Nev.Rev.Stat. § 453.337, and the federal statute prohibiting possession with intent to distribute, 21 U.S.C. § 841(a)(1), are identical, the United States has indicted Mr. Scholz for conspiracy.

A substantive crime and a conspiracy to commit that crime are not the "same offense" for the purposes of a double jeopardy claim, even if based on the same incidents: The essence of the charge of conspiracy is an *agreement* to commit a crime, hence the two prosecutions do not involve the same conduct. *United States v. Felix,* 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

Count 20 of the federal indictment, concerning as it does the maintenance of a illicit drug manufacturing facility, is an entirely different offense from that for which the defendant was prosecuted by Nevada. Thus, under *Blockburger,* there is no double jeopardy with respect to Count 20.

Furthermore, even if the crimes of which the defendant was convicted by the state court were constitutionally identical to the federal charges to which he has pled guilty, the federal prosecution would not violate the Double Jeopardy Clause. Successive prosecutions based on the same conduct are constitutional if brought by separate sovereigns, i.e. the state and federal governments. *United States v. Koon,* 34 F.3d 1416, 1438 (9th Cir.1994) (citing *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985)); *see also United States v. Guy,* 903 F.2d 1240, 1242 (9th Cir.1990).

There is an exception to the "dual sovereignty" doctrine: If the second prosecution, otherwise constitutional, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute, it may be subject to a successful "double jeopardy challenge." *Guy,* 903 F.2d at 1242 (*citing Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959)); *see also United States v. Figueroa–Soto,* 938 F.2d 1015, 1018–19 (9th Cir.1991), *cert. denied,* 502 U.S. 1098, 112 S.Ct. 1181, 117 L.Ed.2d 424 (1992).

In order to establish a so-called *Bartkus* violation of Defendant's Fifth Amendment right freedom from double jeopardy, he must show not mere cooperation between federal and state authorities, but that one prosecuting entity (here, the district attorney) was a "tool" for the other, or that the proceeding is a "sham," done at the behest of the other authority.

This case presents the *Bartkus* "sham" exception to the "dual sovereignty" doctrine in chronological reverse. In most "sham prosecution" double jeopardy claims, the defendant argues that the second, federal prosecution is a surrogate for a failed state prosecution. In Mr. Scholz's case, it appears that the federal government arranged a preliminary state prosecution to serve as a decoy for

an ongoing federal investigation.[1] When the Washoe County D.A.'s office prosecuted Mr. Scholz, it was at the behest of the DEA. In order to avoid panicking Mr. Scholz' coconspirators, the federal agents in charge of the investigation decided to use the local prosecutor's office as a sort of blind. The state prosecution was designed to further no interest of the State of Nevada, other than to cooperate with federal law enforcement agencies. The principal aim of the state prosecution was to provide cover for the federal investigation.

Only last year, the United States Court of Appeals for the Ninth Circuit examined and restated the "sham" rule: "[I]f the second prosecution, otherwise permissible under the dual sovereignty rule, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute, it may be subject to a successful double jeopardy challenge." *United States v. Koon,* 34 F.3d 1416, 1438 (9th Cir.1994) (Fletcher, J.) (quoting *United States v. Guy,* 903 F.2d 1240, 1242 (9th Cir.1990)).

■ Application of the principle to the present claim requires only a simple inversion of the order of events. Here, it was the *first* prosecution, brought in the name of the State of Nevada, which was the sham. When the Washoe County District Attorney agreed to the dropping of all but a single charge, and the indictment of only a single defendant, it was, in fact, executing the policy of the federal government. Agent Ortega's testimony describes a local prosecutor willing to

forsake the advancement of state or county interests in favor of the DEA and the United States Attorney's office.

In "sham prosecution" challenges to a subsequent federal prosecution, the second prosecution escapes double jeopardy prohibition on a showing of "sufficient independent federal involvement." *United States v. Bernhardt,* 831 F.2d 181, 183 (9th Cir.1987). The converse principle obtains where, as here, the defendant argues that the federal government has co-opted the state prosecutorial offices for its own purposes. In such a case, the challenger "must demonstrate that the state officials had little or no independent volition in the state proceedings." *United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir. 1976).

In Mr. Scholz's case, according to Agent Ortega's testimony, the state prosecutor appears to have abdicated policymaking authority in favor of the federal investigators. The only interest served by the decision to pare the state indictment down to a level at which Mr. Scholz' coconspirators would be lulled into a false sense of security appears to be the interest of the federal investigators in uncovering crime on a scale large enough to merit federal prosecutorial interest. No evidence of an independent state prosecution appears of record.

Arguably, the record contains strong evidence that the original prosecution in Nevada's name was in fact a federal case in state clothing. However, even the existence of a "sham" prosecution does not require this court to find a Double Jeopardy Clause viola-

---

1. DEA Special Agent Daniel Ortega's testimony at the evidentiary hearing was as follows:

Ortega: I told [David Scholz] we didn't feel it was a double jeopardy issue from the start, that there were things that we requested of the D.A.'s office that we had happen to assist the investigation, the dropping of charges, that the discussion—

Q: You essentially manipulated the state court prosecution in order to keep Mr. Scholz out on the street to help you, isn't that true?

Ortega: We requested of the D.A.'s office if they would cooperate in the investigation that we would address the penalties in the federal system as best we could.... Myself and Detective Beltron approached the Deputy District Attorney that was handling the case and we stated that there were things that we had

hoped to have happen so that codefendants' involve[d] in the case would see this as a situation where they didn't have to worry about a continuing investigation, maybe nothing was happening after the arrest of Mr. Scholz, and I believe the remaining charge was possession with intent to distribute.

Q: So they agreed to treat Mr. Scholz essentially lightly so that other defendants would think that perhaps Mr. Scholz wasn't cooperating; is that a fair statement?

Ortega: That's correct.

Q: And did the state district attorney do what you asked him to do?

Ortega: Yes, he did.

Transcript of Hearing on *Defendant's Motion to Dismiss,* Doc. # 76, pages 58–60.

**488**

tion: Had both prosecutions been brought in the name of a single sovereign, the lack of identity of offenses would still preclude finding a violation of the Double Jeopardy Clause.

For the foregoing reasons, *IT IS THEREFORE ORDERED* that Defendant's Motion to Supplement Motion to Dismiss and Motion for Reconsideration (Doc. # 363) is hereby *DENIED*.