2014 UT App 51

**STATE of Utah, Plaintiff and Appellee,**

v.

**D. Chris ROBERTSON, Defendant and Appellant.**

**No. 20120951–CA.**

Court of Appeals of Utah.

March 6, 2014.

---

T. Langdon Fisher, for Appellant.

Sean D. Reyes, Deborah L. Bulkeley, and Michelle I. Young, for Appellee.

Judge JOHN A. PEARCE authored this Memorandum Decision, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

Memorandum Decision

PEARCE, Judge:

¶ 1 D. Chris Robertson appeals from his convictions on twenty counts of sexual exploitation of a minor, each a second degree felony. *See* Utah Code Ann. § 76–5b–201 (LexisNexis 2012). Robertson argues that by prosecuting him after his federal conviction for the same conduct, the State violated his constitutional rights by placing him twice in jeopardy for the same offenses. He also

argues that his prosecution by the State is barred by principles of res judicata. We affirm.

¶ 2 The Internet Crimes Against Children task force (ICAC) is a multijurisdictional task force of local, state, and federal law enforcement officers.[1] In March 2009, a Salt Lake City Police Department (SLCPD) detective assigned to ICAC received a tip that Robertson was accessing and viewing child pornography on his workplace computer. After interviewing several of Robertson's employees, ICAC agents obtained a search warrant for Robertson's office from a Utah state district court judge. When the agents executed the search warrant, they discovered more than 24,000 images and approximately 380 videos containing child pornography.

¶ 3 The ICAC case manager, a special agent with the Utah Attorney General's Office, consulted with a Utah state prosecutor and received "the go ahead" to pursue Robertson's prosecution in federal court.[2] The case manager presented the case to an Assistant United States Attorney (the AUSA), who "agreed that there was probable cause to move forward with charges." The AUSA then initiated a federal prosecution against Robertson.

¶ 4 The case manager continued to work with the AUSA as the investigator on the case. In September 2009, when federal authorities presented evidence against Robertson to a federal grand jury, the case manager was the only government witness to testify. After a federal indictment and arrest warrant for Robertson were obtained, the case manager and the SLCPD detective arrested Robertson. The case manager also assisted the federal prosecution. At the request of the AUSA prosecuting the case, the case manager met with defense attorneys to review the case, obtained witness statements, and examined evidence to identify victims.

¶ 5 In April 2010, Robertson pleaded guilty to a single federal count of possessing child pornography. He was eventually sentenced to the two days jail time that he had served after his arrest, as well as federal probation. He was also ordered to pay restitution to two victims in the total amount of $75,000. The case manager was dissatisfied with this sentence and spoke with Utah state prosecutors about the possibility of filing state charges against Robertson. The State then initiated its own prosecution in Utah state court, charging Robertson with twenty counts of sexual exploitation of a minor based on twenty of the images and videos of child pornography found in his possession.

¶ 6 Robertson filed a motion to dismiss, arguing that principles of double jeopardy and res judicata foreclosed the State's ability to prosecute him. The district court denied Robertson's motion, reasoning that the State and the federal governments are separate sovereigns who, under the "dual sovereignty doctrine," are entitled to conduct their individual prosecutions of Robertson without offending double jeopardy principles. *See generally State v. Franklin*, 735 P.2d 34, 36–38 (Utah 1987). After a bench trial, the district court convicted Robertson of all counts and sentenced him to twenty concurrent terms of one to fifteen years in prison.

¶ 7 Robertson appeals, arguing that the district court erred in applying the doctrine of dual sovereignty to deny his motion to dismiss. He argues that the dual sovereignty doctrine should not apply under the circumstances of this case and that his state court convictions are therefore barred under the double jeopardy clauses of both the United States and Utah constitutions, as well as by state double jeopardy statutes and principles of res judicata. These arguments present questions of law, which we review for correctness. *See State v. Sommerville*, 2013 UT App 40, ¶ 6, 297 P.3d 665 (reviewing both double jeopardy and res judicata questions for correctness).

1. Although ICAC generally includes federal agents, it appears that no federal ICAC agents were involved in the investigation or prosecution of either the state or federal case against Robertson.

2. The record does not reveal why the case manager decided to present the case to the United States Attorney's Office rather than commence a state prosecution initially.

## I. Double Jeopardy Under the United States Constitution

¶ 8 The Double Jeopardy Clause of the United States Constitution provides, "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause protects defendants from "(1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.' " *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir.2005) (quoting *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989)). A defendant is not, however, generally placed in double jeopardy when prosecutions for the same criminal behavior are initiated by separate sovereigns under their own laws. *See Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) ("[W]hen the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." (citation and internal quotation marks omitted)).

¶ 9 While acknowledging the dual sovereignty doctrine, Robertson argues that the United States Supreme Court has created, in *Bartkus v. Illinois*, an exception that prevents his subsequent state prosecution in this case. *See* 359 U.S. 121, 123–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Under *Bartkus*, double jeopardy principles may be violated when the initial prosecution by one sovereign is a "sham prosecution" or "is used as a cover or tool for a successive prosecution by another sovereign." *United States v. Barrett*, 496 F.3d 1079, 1119 (10th Cir.2007) (citation and internal quotation marks omitted).

¶ 10 Courts have recognized that *Bartkus* provides only a narrow exception to the otherwise robust dual sovereignty doctrine. *See United States v. Aboumoussallem*, 726 F.2d 906, 910 (2d Cir.1984) (characterizing *Bartkus* as a "narrow exception to the 'dual sovereignty' doctrine"). Even a large measure of cooperation between state and federal authorities is not ordinarily sufficient to invoke *Bartkus*. *See United States*

*v. Bernhardt*, 831 F.2d 181, 182 (9th Cir. 1987) ("It is clear that the *Bartkus* exception does not bar cooperation between prosecuting sovereignties."). Rather, the exception is "limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir.1996). *Bartkus* does not apply so long as each prosecuting sovereign retains "sufficient independent ... involvement" in its own prosecution. *Bernhardt*, 831 F.2d at 183. Thus, to prevail on his *Bartkus* argument, Robertson "must demonstrate that the [federal] officials had little or no independent volition in the [federal] proceedings." *See United States v. Liddy*, 542 F.2d 76, 79 (D.C.Cir.1976).

¶ 11 Robertson contends that the State's substantial involvement in his investigation and federal prosecution pushes this case into the *Bartkus* exception. In support of this contention, Robertson notes that the State's agents initially·discovered Robertson's illegal activities, conducted the investigation, and obtained and executed a state search warrant. He further points out that it was the case manager who, after consultation with a state prosecutor, decided to refer the matter for federal charges. After the federal government elected to prosecute Robertson, the ICAC case manager played a key role in obtaining a federal indictment and arrest warrant, personally participated in Robertson's arrest on the federal warrant, and continued to act as the case agent throughout the federal prosecution.

¶ 12 Despite the State's substantial involvement in Robertson's investigation and federal prosecution, the federal case cannot be accurately characterized as either a sham prosecution or a tool for the State. The record does not support a conclusion that the federal prosecutor lacked independent volition in the federal prosecution against Robertson. The AUSA exercised control over the federal prosecution and could have declined to accept it initially or dismissed it at any time without the State's approval. There is nothing in the record to even suggest that the federal government lost any

ability to prosecute its case in the manner it desired.

¶ 13 Further, the circumstances of this case are readily distinguishable from the cases Robertson cites in which courts have analyzed *Bartkus*. In *United States v. Belcher*, 762 F.Supp. 666 (W.D.Va.1991), the court dismissed a federal indictment that had been obtained only after a state prosecution on similar charges was dismissed. The court found it "inconsistent with the concepts of federalism implicit in the Constitution" that the same attorney had been granted prosecuting authority by both the state and federal governments and had prosecuted both cases against the defendant. *Id.* at 670–71.

¶ 14 In *United States v. Scholz*, 899 F.Supp. 484 (D.Nev.1995), the court stated in dicta that an initial state prosecution was likely "a federal case in state clothing" that would implicate the *Bartkus* exception. *Id.* at 487. In *Scholz*, the federal government had arranged the state prosecution as a decoy for an ongoing federal investigation, "to avoid panicking [the defendant's] coconspirators." *Id.* at 486–87. However, the court found no double jeopardy problem because of substantive differences between the defendant's state and federal crimes. *Id.* at 486.[3]

¶ 15 Here, the State did not lend a state prosecutor to conduct the prior federal action against Robertson, as in *Belcher*, nor is there any evidence or allegation that the State referred the case for federal prosecution as a subterfuge, as in *Scholz*. Taken together, the common thread running through the cases that apply *Bartkus* is the concern that the prosecutorial powers of two sovereigns have been combined in, or are being directed by, a single sovereign. Because the federal government retained control over its prosecution of Robertson, the *Bartkus* exception

does not preclude the application of the dual sovereignty doctrine in this case, and Robertson's prosecution by the State does not violate the double jeopardy protections of the United States Constitution.

## II. Double Jeopardy Under the Utah Constitution

 ¶ 16 Robertson also argues that even if the federal constitution does not prohibit his subsequent state prosecution, the Utah Constitution's double jeopardy clause does. *See* Utah Const. art. I, § 12 ("[N]or shall any person be twice put in jeopardy for the same offense."). Much like its federal counterpart, Utah's double jeopardy clause protects a criminal defendant from "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Harris*, 2004 UT 103, ¶ 24, 104 P.3d 1250 (citation and internal quotation marks omitted).

¶ 17 As Robertson correctly observes, the Utah Supreme Court has stated that the double jeopardy protections of the Utah Constitution are greater in some respects than those found in the United States Constitution. *See id.* ¶ 23 ("[T]he double jeopardy guarantees afforded defendants under the Utah Constitution are different from and provide greater protection than those afforded by the United States Constitution.").[4] Robertson argues that those greater protections should prevent the State from prosecuting him where the State opted to present the case to the federal prosecutor rather than commence its own action as an initial matter.

¶ 18 Presumably, to provide Robertson with stronger protections than the United

---

3. Robertson also cites *United States v. Bernhardt*, 831 F.2d 181 (9th Cir.1987). In *Bernhardt*, the Ninth Circuit Court of Appeals determined that the *Bartkus* exception *might* apply where the state initiated a federal prosecution following the dismissal of state charges and the federal prosecution was conducted by a state prosecutor and funded by the state. *See id.* at 183. However, the court remanded the matter to the trial court to determine whether there was "sufficient independent federal involvement" to avoid the application of *Bartkus*. *Id.* As discussed earlier in this

decision, there is nothing in the record before us upon which we could conclude that the federal authorities lacked independent involvement in Robertson's federal prosecution.

4. Despite the broad general language of *State v. Harris*, 2004 UT 103, ¶ 23, 104 P.3d 1250, Robertson fails to identify any specific double jeopardy protections that have been determined to be greater under the Utah Constitution than under the United States Constitution.

States Constitution, the Utah Constitution would have to recognize a weaker dual sovereignty doctrine, a more expansive *Bartkus* exception, or some combination of the two. But the Utah Supreme Court has expressly recognized the vitality of the dual sovereignty doctrine under the Utah Constitution. *See State v. Franklin,* 735 P.2d 34, 36–38 (Utah 1987) (declining "to follow the lead of some state courts that have interpreted their state constitutions as barring prosecutions by the state after federal prosecutions"). In retaining the doctrine, the supreme court recognized Utah's power to prosecute and "punish those who break its laws" and the need to reject a rule whereby "legitimate prosecutions [would be foreclosed] by the errors, omissions, or inadequacies of federal prosecutions." *Id.* at 38. Here, the State's prosecution of Robertson appears to have been motivated, at least in part, by a belief that the federal prosecution—and particularly the sentence—had inadequately vindicated the State's interest in punishing Robertson.

¶ 19 Further, Robertson has not convinced us that any broader *Bartkus*-type exception under the Utah Constitution would be possible under *Franklin*'s reasoning. The *Franklin* court concluded,

> Were we to hold that Utah could not try individuals because they had been previously tried in a federal court, we still could not prevent the federal government from trying individuals after they had been tried by Utah; we would thus be surrendering state sovereignty in exchange for a more theoretical than real gain in individual rights.

*Id.* Should this court attempt to articulate an exception that is broader than the *Bartkus* exception, we would create a scenario in which significant state-federal cooperation could prevent a state prosecution after a federal action but permit a federal prosecution after a state case. Such a result would partially undercut the rationale for the supreme court's continued recognition of the dual sovereignty doctrine under the Utah Constitution.

¶ 20 Robertson argues that the sovereignty concerns articulated in *Franklin* are less pronounced where the State affirmatively elects to present a case to the federal authorities rather than bring its own action. Even if we were to agree with Robertson that such concerns are diminished when the State suggests, or even encourages, the federal government to prosecute initially, we cannot agree that the State loses its sovereign authority to prosecute potential violations of state law by so doing. As the United States Supreme Court has recognized, a government's "interest in vindicating its sovereign authority through enforcement of its laws by definition *can never be satisfied* by another [sovereign's] enforcement of *its* own laws." *Heath v. Alabama,* 474 U.S. 82, 93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (first emphasis added). Absent the complete abdication of federal prosecutorial authority, such that the State is effectively prosecuting both the state and federal cases—and thereby vindicating its sovereign authority in the first action—the State retains the ability to prosecute violations of its own laws without placing a defendant in double jeopardy.

¶ 21 For these reasons, we conclude that Robertson's state court convictions are not precluded by article I, section 12 of the Utah Constitution.[5]

### III. Res Judicata

¶ 22 Finally, Robertson argues that his state court convictions should be barred under principles of res judicata. "Res judicata has two branches: claim preclusion and issue preclusion." *State v. Walker,* 2013 UT App 198, ¶ 17, 308 P.3d 573. Claim preclusion "corresponds to causes of action and

---

5. Robertson also seeks relief pursuant to Utah Code sections 76-1-403 and -404, which generally codify the Utah Constitution's double jeopardy protections. However, the Utah Supreme Court has noted that those sections provide protections that are consistent with traditional double jeopardy principles. *See State v. Harris,* 2004 UT 103, ¶ 24 n. 6, 104 P.3d 1250 (stating that Utah Code section 76-1-403 codifies a double jeopardy standard similar to that of the Utah Constitution); *State v. Franklin,* 735 P.2d 34, 37 (Utah 1987) ("It is ... appropriate to view section 76-1-404 as a legislative codification of traditional double jeopardy interpretation."). Accordingly, the statutory provisions do not provide Robertson with any greater protection than the constitutional provisions we have addressed herein.

bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *State v. Sommerville,* 2013 UT App 40, ¶ 30, 297 P.3d 665 (citations and internal quotation marks omitted). "Issue preclusion, which is also known as collateral estoppel, corresponds to the facts and issues underlying causes of action and prevents parties or their privies from relitigating facts and issues in [a] second suit that were fully litigated in the first suit." *Id.* (alteration in original) (citations and internal quotation marks omitted). Robertson argues that both claim preclusion and issue preclusion bar his state court convictions.

¶ 23 One requirement of claim preclusion is that "both cases must involve the same parties or their privies." *Walker,* 2013 UT App 198, ¶ 18, 308 P.3d 573 (citation and internal quotation marks omitted). Similarly, in order for issue preclusion to apply, "the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication." *Boudreaux v. State,* 1999 UT App 310, ¶ 21, 989 P.2d 1103 (citation and internal quotation marks omitted).

¶ 24 This court, relying in part on the dual sovereignty doctrine, has previously recognized that the State and the federal government are not considered to be in privity for purposes of res judicata. *State v. Byrns,* 911 P.2d 981, 984 (Utah Ct.App.1995) ("Under the 'dual sovereignty' doctrine, principles of collateral estoppel generally cannot be invoked to bar the relitigation of an issue by a separate sovereign."); *accord United States v. Smith,* 446 F.2d 200, 202 (4th Cir.1971) ("The federal government is neither the same as nor in privity with the State of Virginia and therefore is not barred from relitigating facts resolved in defendant's favor in the former prosecution."). Because there is no privity between the State and the federal government in relation to Robertson's

prosecutions, res judicata does not bar Robertson's state court convictions.[6]

¶ 25 In conclusion, Robertson has not established that his state court convictions are barred either as a matter of double jeopardy under the United States Constitution or the Utah Constitution or by principles of res judicata. Accordingly, we affirm Robertson's convictions.

---

6. Robertson argues the circumstances of this case—i.e., the State's substantial involvement in the investigation and federal prosecution—create privity between the State and the federal government for res judicata purposes. However, as with his double jeopardy argument, whether the State acts so closely with the federal government as to be deemed a single sovereign for res judica-

ta purposes is informed by *Bartkus*. *See State v. Byrns,* 911 P.2d 981, 984 (Utah Ct.App.1995) (stating that *Bartkus* "carved out a narrow exception" to the dual sovereignty doctrine's application to res judicata). As discussed above, the level of involvement between the State and federal authorities falls well short of the high bar *Bartkus* sets.