*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 27**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

D. CHRIS ROBERTSON,
*Petitioner.*

No. 20140268
Filed May 15, 2017

On Certiorari to the Utah Court of Appeals

Third District, West Jordan
The Honorable Terry L. Christiansen
No. 111401510

Attorneys:

Elizabeth Hunt, Salt Lake City, for petitioner

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Solic. Gen.,
Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM,
and JUSTICE HIMONAS joined.

Having recused himself, JUSTICE PEARCE did not participate herein.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1 Defendant D. Chris Robertson was prosecuted and convicted by the federal government for possession of child pornography. The State of Utah subsequently charged him with twenty counts of sexual exploitation of a minor based on the same conduct. Mr. Robertson argues that Utah Code section 76-1-404 prohibits this subsequent state prosecution. That statute provides that "[i]f a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of

another jurisdiction, federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if . . . the former prosecution resulted in an acquittal, conviction, or termination of prosecution . . .; and [] the subsequent prosecution is for the same offense or offenses."

¶ 2   Under our previous interpretation of section 404, this statute would present no barrier to the current prosecution. In *State v. Franklin*,[1] we concluded that section 404 incorporated the "dual sovereignty" doctrine, a principle of double jeopardy law that permits subsequent prosecutions by different sovereigns, even for the "same offense." The court of appeals affirmed Mr. Robertson's convictions in accordance with this precedent.

¶ 3   Today, we reassess that earlier interpretation and ultimately conclude that it was wrongly decided. Taking into account stare decisis considerations, we overrule *Franklin* as to that issue and hold that the legislature's use of the phrase "same offense" in section 404 is an express rejection of the dual sovereignty doctrine. Properly interpreted, section 404 requires courts to employ only the *Blockburger-Sosa* test for determining whether two offenses are the "same offense." Under this test, two offenses are not the same if each requires proof of an element that the other does not.

¶ 4   After articulating the correct interpretation of the statute, we apply it to this case. Because the charged offenses in his federal and state prosecutions are the "same offense" under the *Blockburger-Sosa* test, and because the record shows that the state prosecution is based on the same conduct that was at issue in the initial federal prosecution, we conclude that section 404, properly interpreted, prohibits the State from prosecuting Mr. Robertson. We therefore reverse the decision of the court of appeals.

**Background**

¶ 5   In March 2009, one of Mr. Robertson's employees alerted authorities that Mr. Robertson was viewing child pornography on his workplace computer. The Utah Internet Crimes Against Children Task Force (ICAC) began an investigation. Detective Mark Buhman, a Salt Lake City Police Department (SLPD) Officer assigned to the Utah ICAC, was made lead investigator on the case. The Utah ICAC is a "multi-jurisdictional task force that investigates and prosecutes

---

[1] 735 P.2d 34 (Utah 1987).

2

individuals who use the Internet to exploit children."[2] The task force has thirty-two local, state, and federal police agency affiliates, including the FBI and the Department of Homeland Security.[3] Although the Utah ICAC includes federal affiliates, the initial investigation of Mr. Robertson's case did not involve any federal agents.[4]

¶ 6 Detective Buhman eventually secured a warrant to search Mr. Robertson's business and seize his computers. During the search, officers seized a black, custom-built computer; a Dell computer; and several computer storage media. Examination of the computers revealed more than 24,000 still images of child pornography and approximately 380 child pornography videos. Mr. Robertson agreed to speak to Detective Buhman during the search and admitted to viewing and downloading child pornography. But he denied re-sending or producing any pornography. Detective Buhman was eventually reassigned and Special Agent Benjamin Lee of the Utah Attorney General's Office took over the case.

¶ 7 Agent Lee concluded the investigation and decided to have the case screened for federal prosecution. Before moving forward with federal screening, Agent Lee sought approval from the Assistant Utah Attorney General who oversaw ICAC cases. Seeking such approval was standard protocol, and the Assistant Utah Attorney General had no objection. The State sought federal prosecution in order to obtain a more severe sentence.[5]

¶ 8 During federal screening, Agent Lee presented an attorney from the United States Attorney's Office with ten or eleven short digital videos depicting child pornography. Agent Lee testified that these videos "would have been from the Dell computer." The United States Attorney's Office concluded that there was probable cause to support federal prosecution.

---

[2] *Internet Crimes Against Children (ICAC) Task Force*, http://attorneygeneral.utah.gov/justice/internet-crimes-against-children-icac-task-force (last updated Apr. 21, 2017).

[3] *Id.*

[4] *State v. Robertson*, 2014 UT App 51, ¶ 2 n.1, 321 P.3d 1156.

[5] Mr. Robertson cites to Exhibit 1 from the August 15, 2012 bench trial that the "Assistant Utah Attorney General told [Mr.] Robertson's ex-wife that the reason federal prosecution was pursued was to obtain a more severe sentence."

¶ 9 Mr. Robertson was indicted by a federal grand jury in September 2009 on one count of possession of child pornography in violation of 18 U.S.C. section 2252A(a)(5)(B) (2008).[6] The indictment charged Mr. Robertson with "knowingly possess[ing] computer disks and other materials containing images of child pornography." The indictment also contained a forfeiture notice, requiring Mr. Robertson to "forfeit to the United States . . . any and all property . . . used or intended to be used in any manner or part to commit and to facilitate the commission of a violation" of the federal child pornography criminal statute. The notice specifically identified the following property to be forfeited: the black custom tower, silver Dell tower, silver Maxtor external hard drive, Quantam Fireball, TDK CD-R Fresenius 11-5-08, and the CD-R 10/05 Latitude D505. Mr. Robertson ultimately pled guilty as charged and was sentenced to time served in jail (two days), five years of federally supervised release, and $75,000 in restitution to be paid to two victims.

¶ 10 Upon learning of the federal sentence, an Assistant Utah Attorney General contacted Agent Lee to "discuss the possibility of filing state charges." After reviewing the evidence, the Assistant Utah Attorney General decided to proceed with state prosecution of Mr. Robertson. The State charged him with twenty counts of sexual exploitation of a minor in violation of Utah Code section 76-5a-3.[7]

---

[6] 18 U.S.C. § 2252A(a)(5)(B) (2008) (making it a crime to "knowingly possess[], or knowingly access[] with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer").

[7] Mr. Robertson was charged under the 2004 version of the statute. It has since been amended and renumbered as section 76-5b-201. The 2004 version of the statute stated that "[a] person is guilty of sexual exploitation of a minor . . . when the person knowingly produces, distributes, possesses, or possesses with intent to distribute, child pornography . . . ." UTAH CODE § 76-5a-3(1)(a) (2004). It also made sexual exploitation of a minor a second-degree felony. *Id.* § 76-5a-3(2). And made it a separate offense "for each

(Continued)

These charges were based on eleven images or videos of child pornography found on each of his two computers.[8] The probable cause statement initiating the State's case indicated that the State was prosecuting Mr. Robertson "for the same criminal acts" as the federal prosecution, which the State claimed was permitted "because prosecution under the laws of separate sovereigns does not subject a defendant to double jeopardy."

¶ 11 Mr. Robertson moved to dismiss the State charges, claiming that the State's prosecution violated his constitutional right to due process under the double jeopardy clause of the state and federal constitutions, violated Utah Code section 76-1-404's rule against double jeopardy, and was barred by the doctrines of res judicata and collateral estoppel. He also claimed that the State's prosecution was vindictive. The trial court denied Mr. Robertson's motion to dismiss, finding that the state prosecution following federal prosecution was permissible under current law and that the State's prosecution was not vindictive. As part of its order denying Mr. Robertson's motion, the court specifically found that Mr. Robertson's Utah prosecution was "[b]ased on the same body of evidence" as his federal prosecution. Mr. Robertson filed a petition for interlocutory appeal, which was denied.

¶ 12 After a bench trial where Mr. Robertson did not contest his guilt, he was convicted and sentenced to twenty concurrent terms of one to fifteen years in prison. At the sentencing hearing, the trial court described the case as "basically the same case that was had in federal court, it's based on the same facts." The court decided not to treat the prior federal conviction as an aggravating factor, reasoning that the federal conviction is "exactly the same case, same investigation, the same facts. . . . [and that] it would be unduly prejudicial . . . to consider it a prior criminal conviction when it's based on the same facts and circumstances."

¶ 13 Mr. Robertson appealed to the court of appeals, arguing "that the dual sovereignty doctrine should not apply under the circumstances of this case and that his state court convictions are

---

minor depicted" and "each time the same minor is depicted in different child pornography." *Id.* § 76-5a-3(3).

[8] The record indicates that these charges "were based on the admission of 11 child pornography images found in the 'pictures' folder on the custom computer and 11 child pornography videos found in the 'My Videos' folder of the Dell computer."

therefore barred under the double jeopardy clauses of both the United States and Utah constitutions, as well as by state double jeopardy statutes and principles of res judicata."[9] The court of appeals affirmed, holding that the *Bartkus* exception to the federal dual sovereignty doctrine did not apply,[10] the Utah Constitution did not prevent the subsequent prosecution,[11] and res judicata did not apply because "the State and the federal government are not considered to be in privity for purposes of res judicata."[12] In a footnote, the court noted that Mr. Robertson also sought relief pursuant to Utah Code section 76-1-404.[13] The court recognized that we have interpreted this section to "provide protections that are consistent with traditional double jeopardy principles" and concluded that the statute did not provide "any greater protection than the constitutional provisions we have addressed herein."[14] Mr. Robertson petitioned for certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶ 14 We granted certiorari to address whether the court of appeals erred in holding that Utah Code section 76-1-404 did not bar the State's subsequent prosecution of Mr. Robertson.[15] "On certiorari, we review the court of appeals' decision for correctness," which "turns on whether that court accurately reviewed the trial

---

[9] *Robertson*, 2014 UT App 51, ¶ 7.

[10] *See id.* ¶¶ 9–15.

[11] *See id.* ¶¶ 18–21.

[12] *Id.* ¶ 24.

[13] *See id.* ¶ 21 n.5.

[14] *Id.* (citing *State v. Franklin*, 735 P.2d 34, 37 (Utah 1987)).

[15] We also granted certiorari to review whether the court of appeals erred in holding that both the Utah and federal constitutions did not bar the State's subsequent prosecution. But because we conclude that the proper interpretation and application of section 404 resolves this case, we do not reach the constitutional questions. *See Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 24, 332 P.3d 900 ("Where possible, we decide cases 'on the preferred grounds of statutory construction,' thereby avoiding analysis of underlying constitutional issues 'unless required to do so.'" (citation omitted)).

court's decision under the appropriate standard of review."[16] "The proper interpretation and application of a statute is a question of law [reviewed] for correctness."[17]

## Analysis

¶ 15 The double jeopardy clauses of both the Utah and federal constitutions limit the government's ability to prosecute or punish an individual multiple times for the same conduct.[18] In general, "[t]he prohibition against double jeopardy protects defendant[s] against three things: prosecution for the same offense after acquittal, prosecution for the same offense after conviction, and the infliction of multiple punishments for the same offense."[19] These protections turn on whether the subsequent prosecution or punishment is for the "same offense." There are two analyses that guide our inquiry into whether two offenses are the "same" under either constitution.

¶ 16 First, we employ the test announced by the United States Supreme Court in *Blockburger v. United States*[20]: two offenses are considered not the "same" when each "requires proof of a fact which the other does not."[21] We adopted this same test for use in double jeopardy cases arising under the Utah Constitution in *State v. Sosa*.[22] There we stated that if "the elements of [a defendant's] separate prosecutions differ, and either offense could have been established without establishing the other, the double jeopardy doctrine does not apply."[23] Under this test, a lesser included offense is considered

---

[16] *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242.

[17] *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998).

[18] *See* U.S. CONST. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); UTAH CONST. art. I, § 12 ("[N]or shall any person be twice put in jeopardy for the same offense.").

[19] *State v. Franklin*, 735 P.2d 34, 35 (Utah 1987).

[20] 284 U.S. 299 (1932).

[21] *Id.* at 304.

[22] 598 P.2d 342 (Utah 1979).

[23] *Id.* at 346.

the "same offense" as the greater offense.[24] We refer to this test, which "emphasizes the elements of the two crimes,"[25] as the *Blockburger-Sosa* test.

¶ 17 Second, we look to whether the successive prosecution is undertaken by the same sovereign. "[W]hen the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable.'"[26] Thus, even if two crimes would constitute the "same offense" under the *Blockburger-Sosa* test, they are considered separate offenses if prosecuted by two separate sovereigns, such as with successive prosecutions for the same conduct under state and federal law. This is known as the "dual sovereignty doctrine."[27]

¶ 18 These two analyses—*Blockburger-Sosa* and dual sovereignty—together determine whether a defendant has been prosecuted or punished for the "same offense" under both federal and Utah constitutional law. Some states have departed from this approach by enacting statutes that limit the dual sovereignty doctrine.[28] In these states, "a prior federal prosecution is a complete bar to a subsequent prosecution by the state."[29] The question before us today is whether our legislature in enacting Utah Code section 76-1-404 intended to similarly limit the dual sovereignty doctrine.

¶ 19 Our discussion of this issue proceeds in three parts. First, we discuss our prior interpretation of section 404, found in *State v. Franklin*, and conclude that we squarely held that section 404 incorporated without limitation the dual sovereignty doctrine. Second, we discuss whether that interpretation should be overruled today. We hold that it should. We then interpret section 404's use of

---

[24] *See State v. Dyer*, 671 P.2d 142, 147 (Utah 1983) ("A lesser included offense is treated the same as its corresponding greater offense under the double jeopardy clause.").

[25] *Sosa*, 598 P.2d at 346 (citation omitted).

[26] *Franklin*, 735 P.2d at 36 (quoting *Heath v. Alabama*, 474 U.S. 82, 88 (1985)).

[27] *See id.*

[28] *See id.* at 37.

[29] *Id.* at 38.

"same offense" as incorporating only the *Blockburger-Sosa* test, though we note that the relevant units of prosecution help to inform courts as to the conduct at issue in the prosecutions. Finally, we determine that our decision to overrule *Franklin* will apply retroactively to cases pending on direct and collateral review and that, under the proper interpretation of section 404, the State was barred from prosecuting Mr. Robertson. Accordingly, we reverse the court of appeals' decision.

I. In *State v. Franklin*, We Held that Section 76-1-404 Incorporated the Dual Sovereignty Doctrine

¶ 20 The heart of this case is the proper interpretation of Utah Code section 76-1-404. The statute reads as follows:

> If a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of another jurisdiction, federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if:
>
> (1) the former prosecution resulted in an acquittal, conviction, or termination of prosecution, as those terms are defined in Section 76-1-403; and
>
> (2) the subsequent prosecution is for the same offense or offenses.

We have addressed this statute only once, in *State v. Franklin*.[30] Because the parties dispute the precedential effect of our discussion of section 404 in *Franklin*, we will review our decision in that case in some detail.

¶ 21 The defendant in *Franklin* was "an avowed racist" who "shot and killed two black men who were jogging in Liberty Park with two white women."[31] He was convicted in federal court "of violating the civil rights of his victims," a federal offense, and received two life sentences.[32] "After the federal prosecution, defendant was charged and tried by the State of Utah for two counts of first degree murder," with the State seeking the death penalty.[33]

---

[30] 735 P.2d 34 (Utah 1987).

[31] *Id.* at 35.

[32] *Id.*

[33] *Id.*

"The jury in Utah district court convicted defendant, but was unable to reach a unanimous verdict for death," so the defendant was sentenced "to two consecutive life terms to be served at the end of the federal sentences."[34]

¶ 22 On appeal, the defendant claimed that his subsequent "trial in state court after his conviction in federal court violated the prohibitions against double jeopardy contained in the United States Constitution and in the Utah Constitution and Code"—section 76-1-404.[35] We first analyzed whether the two prosecutions were for the "same offense" under the *Blockburger-Sosa* test, which looks to whether the two offenses were "defined by the same legal elements."[36] We concluded that "[e]ach of the offenses of which defendant ha[d] been convicted require[d] proof of facts that the other does not."[37] For the civil rights violation, the federal prosecutor had to prove that the "defendant, by threat or force, willfully injured, intimidated, or interfered with another person because of the other's race, color, or national origin and because he was enjoying a benefit, service, privilege, program, or activity provided or administered by a state."[38] But for the state offenses, the prosecutor was required to prove that the defendant "intentionally or knowingly kill[ed] both victims at the same time or in a manner that endangered the lives of persons other than himself or his victims."[39] "Thus, the federal and state statutes under which defendant was convicted require[d] proof of different elements and d[id] not define the same offense"—i.e., they were not the "same offense" under *Blockburger-Sosa*.[40]

¶ 23 Having reviewed whether the offenses were the same under the *Blockburger-Sosa* analysis, we then proceeded to the second analysis of whether the two offenses were the same: the dual sovereignty doctrine, which looks to whether the offenses were against the same sovereign. We concluded that "[d]efendant's

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at 35–36.

[37] *Id.* at 36.

[38] *Id.*

[39] *Id.*

[40] *Id.*

convictions [were] also separate offenses because they were imposed under the laws of different sovereigns"—federal and state.[41] We disagreed with the defendant's argument that the Utah Constitution should be interpreted as rejecting the dual sovereignty doctrine, expressing concern that such a rejection would "surrender[] state sovereignty in exchange for a more theoretical than real gain in individual rights."[42] We also rejected his argument that Utah Code section 76-1-404 provided greater protections than those afforded by either the Utah or United States constitutions.[43]

¶ 24 The defendant in *Franklin* argued that we should "abandon the dual sovereignty doctrine" because section 76-1-404 "compels that result."[44] In our discussion of section 404, we noted that the protections offered by the statute turned on the meaning of "same offense."[45] This was crucial to our analysis for, "[w]hen the legislature uses a word with a well-established legal meaning, we assume that the legislature is aware of that meaning and has used the word in its proper sense."[46] We compared section 404 to the preceding statutory section, discussing how that section, which deals with offenses arising out of the same criminal episode, does not use the specific term "same offense," a well-established term of art.[47] Thus, we concluded that the statutes indicated "the legislature's awareness of double jeopardy terminology and its intent to use that terminology precisely."[48] Ultimately, we held that section 404 should be viewed "as a legislative codification of traditional double jeopardy interpretation," which included the dual sovereignty doctrine.[49]

¶ 25 Mr. Robertson argues that this second holding, our conclusion that section 404's use of "same offense" evidenced the

---

[41] *Id.*

[42] *Id.* at 38.

[43] *Id.* at 37.

[44] *Id.* at 36.

[45] *Id.* at 37.

[46] *Id.*

[47] *See id.* (discussing UTAH CODE § 76-1-403).

[48] *Id.*

[49] *Id.*

legislative intent to incorporate both a *Blockburger-Sosa* analysis as well as the dual sovereignty doctrine, is dicta. "For a decision to become precedent and trigger stare decisis, 'it must be (1) [a] deliberate or solemn decision of a court or judge [2] made after argument of a question of law fairly arising in a case, and [3] necessary to its determination.'"[50] Our interpretation of section 404 in *Franklin* was a deliberate decision that we made after taking argument on that issue. The issue raised by Mr. Robertson is whether that decision was necessary to our determination. As he argues, because we had already concluded that the two offenses were not the "same offense" under *Blockburger-Sosa*, any discussion of dual sovereignty was extraneous to our discussion and ultimately not necessary for our decision. We reject this argument, as it misconstrues both the meaning of "necessary" and the relevant double jeopardy principles.

¶ 26 When we say that a holding is binding only when it is "necessary," we do not mean that the holding must be the singular basis for our ultimate decision. Courts "often confront cases raising multiple issues that could be dispositive, yet they find it appropriate to resolve several, in order to avoid repetition of errors on remand or provide guidance for future cases. Or, [courts] will occasionally find it appropriate to offer alternative rationales for the results they reach."[51] Were we to require that a holding must be necessary in some strict, logical sense before it becomes binding precedent, then every time we articulated alternative bases for a decision we would convert our opinion into dicta, for none of the alternative bases are strictly necessary for the outcome. "[L]awyers advising their clients would have to guess whether a later [court] will recognize a ruling that is directly on point as also having been necessary. We decline to introduce such uncertainty into the law . . . ."[52]

¶ 27 Instead, "necessary" "means only that the court undeniably decided the issue, not that it was unavoidable for it do so."[53] As the Ninth Circuit stated:

---

[50] *Q-2 L.L.C. v. Hughes*, 2016 UT 8, ¶ 11, 368 P.3d 86 (alterations in original) (citation omitted).

[51] *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (footnote omitted).

[52] *Id.* at 915.

[53] *Id.*

> Of course, not every statement of law in every opinion is binding . . . . Where it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the [court's] full attention, it may be appropriate to re-visit the issue in a later case. . . . Where, on the other hand, it is clear that a majority of the [court] has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue, that ruling becomes the law . . . .[54]

Thus, when this court "confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the [state], regardless of whether doing so is necessary in some strict logical sense."[55]

¶ 28 As discussed above, under traditional double jeopardy jurisprudence, the *Blockburger-Sosa* analysis and the dual sovereignty doctrine must both be satisfied for two offenses to be considered the same. In other words, two offenses are the same when they require proof of the same facts and are prosecuted by the same sovereign. Conversely, two offenses are not the same where each requires proof of a fact that the other does not *or* where they have been prosecuted by two different sovereigns. Failing either analysis means the offenses cannot be considered the "same" and, therefore, prosecution of both offenses is not barred by double jeopardy. In *Franklin*, we determined that the offenses were not the same under either analysis and that nothing in section 404 altered that result. As our discussion of one analysis did not preclude the consideration of the other, both analyses—*Blockburger-Sosa* and dual sovereignty—were germane to our ultimate decision. Thus, our second holding in *Franklin*, which specifically incorporated the dual sovereignty doctrine into our interpretation of section 76-1-404, was not dicta but an alternative holding that justified the result we reached. Accordingly, it is binding precedent. We turn now to the issue of whether that precedent should be overruled.

---

[54] *Id.* at 915–16.

[55] *Id.* at 914.

II. We Hold that "Same Offense" in Section 76-1-404 Incorporates the *Blockburger-Sosa* Test but Rejects the Dual Sovereignty Doctrine, Overruling in Part *State v. Franklin*

¶ 29 Having clarified the precedential value of *State v. Franklin*,[56] we now discuss whether our decision therein that Utah Code section 76-1-404 incorporated the dual sovereignty doctrine should be overruled. We do not overrule a prior interpretation of a statute lightly, out of respect for the stare decisis principles of "predictability and fairness."[57] But even though overruling a prior interpretation of a statute is an "unusual step,"[58] "[t]he doctrine of stare decisis . . . 'is neither mechanical nor rigid as it relates to courts of last resort.'"[59] As we discuss below, we believe that the portion of *Franklin* interpreting the "same offense" language of section 404 to incorporate the dual sovereignty doctrine should be overruled. We hold today that "same offense," as used in section 404, should be interpreted as incorporating only the *Blockburger-Sosa* test and that section 404 is an express rejection of the dual sovereignty doctrine.

*A. We Are Persuaded that* Franklin*'s Interpretation of Section 76-1-404 Should Be Overruled*

¶ 30 We consider at least three factors when deciding whether to overrule a prior interpretation of a statute: "the plausibility of the existing interpretation given the statute, the degree to which that interpretation has worked itself into the state of the law, and the strength of the arguments for changing that interpretation."[60] We discuss each factor below and conclude that they weigh in favor of overruling *State v. Franklin*.

1. The plausibility of the existing interpretation

¶ 31 The first factor that we consider is "the plausibility of the existing interpretation given the statute."[61] This factor is analogous

---

[56] 735 P.2d 34 (Utah 1987).

[57] *See State v. Guard*, 2015 UT 96, ¶ 33, 371 P.3d 1 (citation omitted).

[58] *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1283 (Utah 1987).

[59] *Guard*, 2015 UT 96, ¶ 33 (citation omitted).

[60] *A.C. Fin., Inc. v. Salt Lake Cty.*, 948 P.2d 771, 775 (Utah 1997) (citation omitted).

[61] *Id.* (citation omitted).

to the first factor we consider when deciding whether to overrule common law precedent: "the persuasiveness of the authority and reasoning on which the precedent was originally based."[62] In either case, we are looking to determine whether our prior decision properly considered the relevant arguments and reached a persuasive conclusion.[63] In the statutory interpretation context, this means we consider whether the prior interpretation is "[]reasonable given the statutory framework in existence at that time."[64]

¶ 32 Our interpretation of section 404 in *Franklin* is undermined by the fact that we did not consider in any great depth any of the language of the statute other than the phrase "same offense."[65] Although we noted that "same offense" was a term of art with particular meaning in the double jeopardy context and was intentionally used as a term of art in the statute, we did not examine whether the legislature intended to modify or limit the definition of that term of art. A familiar canon of statutory construction is that the context of a statute may eliminate potential interpretations of a statutory phrase.[66] And a possible interpretation of a statutory term that "undercut[s] the express language"[67] of the statute must be rejected because "we give effect to every word of a statute, avoiding '[a]ny interpretation which renders parts or words in a statute inoperative or superfluous.'"[68]

¶ 33 The language of section 76-1-404 plainly bars a Utah prosecution if the defendant has already been prosecuted for the same offense in another jurisdiction.[69] Thus, the language operates as

---

[62] *Guard*, 2015 UT 96, ¶ 34 (citation omitted).

[63] *See id.* ¶ 48.

[64] *A.C. Fin.*, 948 P.2d at 775.

[65] *See Franklin*, 735 P.2d at 37.

[66] *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 13, 248 P.3d 465 ("The fact that the statutory language may be susceptible of multiple meanings does not render it ambiguous; 'all but one of the meanings is ordinarily eliminated by context.'" (citation omitted)).

[67] *Id.* ¶ 18.

[68] *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 (alteration in original) (citation omitted).

[69] *See* UTAH CODE § 76-1-404 ("If a defendant's conduct establishes the commission of one or more offenses within the concurrent

(Continued)

a limitation on the dual sovereignty doctrine, which permits a defendant to be prosecuted for the same offense in two or more jurisdictions so long as the prosecutions are conducted by different sovereigns.[70] Indeed, far from incorporating the dual sovereignty doctrine, the statute does just the opposite—it acts as an express, legislative rejection of that doctrine. Interpreting the statute to incorporate the dual sovereignty doctrine, i.e., that it permits a Utah prosecution to follow prosecution for the same offense in another jurisdiction, requires us to read a meaning into the text that is directly contradicted by the text itself. We cannot think of an instance where a prosecution in another jurisdiction would not also necessarily involve prosecution by another sovereign.[71] Our

---

jurisdiction of this state and of another jurisdiction, federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if" the statute's two requirements are met.).

[70] *See Franklin*, 735 P.2d at 36.

[71] The State argues that our incorporation of the dual sovereignty doctrine is plausible because section 404's prohibition of multiple prosecutions for the "same offense" "within the concurrent jurisdiction of this state and of another jurisdiction" can be interpreted as prohibiting multiple prosecutions across multiple jurisdictions of a violation of a single jurisdiction's criminal statute. In other words, the statute is limited to instances where the State attempts to prosecute an individual in Utah court under the exact same criminal statute—whether state or federal—that the individual has already been prosecuted under in another jurisdiction. Thus, in the State's view, the incorporation of the dual sovereignty did not render the statute superfluous because it still provides some limited protections to defendants. The flaw with this argument is that a federal offense cannot be prosecuted in a state court, *see* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."); a state offense generally cannot be prosecuted in federal courts, *see Beal v. Missouri Pac. R.R. Corp.*, 312 U.S. 45, 49–50 (1941) ("The federal courts are without jurisdiction to try alleged criminal violations of state statutes."), *but see* 28 U.S.C. § 1442 (permitting the removal to federal court of a "criminal prosecution that is commenced in a State court" of a federal officer); and a violation of one state's criminal laws cannot be prosecuted in another state, *see* U.S. CONST. art. IV, § 2. There is no possibility that a defendant can be prosecuted under the same criminal statute by different sovereigns in different jurisdictions. To

(Continued)

interpretation in *Franklin* renders the statute a superfluity. Because our decision in *Franklin* did not grapple with this apparent incongruity, its interpretation of section 404 is accordingly less persuasive and plausible. We turn now to the second factor.

2. The degree to which the prior interpretation has worked itself into the law

¶ 34 The second factor we consider in deciding whether to overrule a prior interpretation of a statute is "the degree to which that interpretation has worked itself into the state of the law."[72] This requires weighing "whether the interpretation in question has become settled in the minds of the bench and bar" and "the degree to which the interpretation, however old, has been woven into the fabric of the law."[73] This factor corresponds with the second factor considered in deciding whether to overrule common law precedent: "how firmly the precedent has become established in the law since it was handed down," which looks to "the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned."[74] Ultimately, we are concerned with whether overruling our precedent would upend broad swaths of the legal landscape.

¶ 35 Mr. Robertson argues that *Franklin*, while almost thirty years old, has not been "woven into the fabric of the law" because it has never again been cited for its interpretation of section 76-1-404. Although it is true that section 404 has only been addressed by Utah courts twice—once in *Franklin* and again in this case—and the dual sovereignty doctrine has only been addressed three times—*Franklin*, this case, and *State v. Byrns*,[75] a court of appeals case that did not address section 404—this evidence is unpersuasive. In *A.C. Financial, Inc. v. Salt Lake County*, the appellant "point[ed] to the fact that *Black* [the prior case interpreting a statute] ha[d] been infrequently cited

---

interpret section 404 in this way would only further confirm that our prior interpretation of the statute in *Franklin* rendered it a superfluity, providing hypothetical protections against currently impossible scenarios.

[72] *A.C. Fin.*, 948 P.2d at 775 (citation omitted).

[73] *Hackford*, 740 P.2d at 1285.

[74] *Guard*, 2015 UT 96, ¶ 34 (citations omitted).

[75] 911 P.2d 981 (Utah Ct. App. 1995).

and argue[d] that the rule of *Black* ha[d] not become firmly rooted in the state of the law and that abandoning it would have little impact."[76] We rejected this argument, stating that "[i]t is impossible to say whether the dearth of citations indicates that the *Black* [interpretation] is little known or rather that it has been consistently assumed to be valid to the extent that it has not been directly challenged."[77] The same holds true here: *Franklin* is clear, and the lack of any subsequent discussion of its holding may simply be the result of prosecutors and defendants accepting its interpretation of section 404.

¶ 36 Although the lack of citations is generally inconclusive, there are other ways of determining whether a particular interpretation has worked its way into the law. For example, in *A.C. Financial*, the prior interpretation had created a "widely accepted rule" that was repeatedly recognized in later cases.[78] We also noted that the general public had apparently accepted our interpretation, as demonstrated by the fact that "many mortgages and trust deeds . . . contain[ed] multiple provisions" directly related to the rule we had adopted.[79] Such acts showed a general acceptance of the prior interpretation and reliance on that interpretation by the public in settling their affairs. There is no such evidence in this case.

¶ 37 There are no other cases reaffirming the interpretation we adopted in *Franklin*. There are no other statutes or common law doctrines that depend on or otherwise incorporate our interpretation of section 404. And we are not persuaded that there is any great reliance on *Franklin*'s interpretation of section 404. There are no contractual, property, or similar vested rights created by our interpretation of section 404 that would be undermined by departing from *Franklin* today. Indeed, the effects of a departure from our interpretation in *Franklin* are both obvious and narrow: the State would be prohibited from prosecuting a defendant who has already been prosecuted in another jurisdiction for the same offense.[80] Thus,

---

[76] 948 P.2d at 775–76.

[77] *Id.* at 776.

[78] *Id.*

[79] *Id.*

[80] It is worth noting that, even though we overrule *Franklin* in part today, the State still remains free to prosecute a defendant so long as it is either the first jurisdiction to do so or the Utah offenses are not

(Continued)

"while [*Franklin*'s] interpretation is settled, it is not so enmeshed in the substance of the law that it could not easily be changed without having many unanticipated ramifications and without conflicting with real or presumed legislative intentions."[81] This factor accordingly weighs in favor of overruling *Franklin*. We turn now to the third factor.

### 3. The strength of the arguments for changing the prior interpretation

¶ 38 The third factor we look to when deciding whether to overrule a prior interpretation of a statute is "the strength of the arguments for changing that interpretation."[82] Under this factor we inquire whether "more good than harm will come by departing from precedent."[83] We do so by looking to policy arguments and "practical factors" that inform our careful consideration of where the departure from precedent will lead us.[84]

¶ 39 The State argues that our prior interpretation of section 76-1-404 should be upheld because it best protects the interests of the State of Utah and its citizens. The State claims that if we interpret section 404 as rejecting the dual sovereignty doctrine, we would be "relinquish[ing] unnecessarily the power of the State to try and punish those who break its laws" based on prosecutions in other jurisdictions that may not satisfy Utah's sovereign interests.[85] It also argues that because the federal government remains free to prosecute an individual after a Utah prosecution, we would "be surrendering state sovereignty in exchange for a more theoretical than real gain in individual rights."[86]

¶ 40 Although the State's arguments have some merit—indeed, these were the very reasons why we originally incorporated the dual

---

the same as those for which the defendant has already been prosecuted.

[81] *Hackford*, 740 P.2d at 1285.

[82] *A.C. Fin.*, 948 P.2d at 775 (citation omitted).

[83] *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 23, 245 P.3d 184 (citation omitted).

[84] *Hackford*, 740 P.2d at 1286.

[85] *See Franklin*, 735 P.2d at 38.

[86] *Id.*

sovereignty doctrine into section 404—they do not outweigh our duty to respect our constitutionally limited role as interpreters and not creators of statutory law. Our constitution vests the legislative power of the State in the legislature and legal voters.[87] "The legislative power is . . . defined by the work product it generates[:] . . . rules of general applicability."[88] These statutes or ordinances "set[] the governing standard for all cases coming within [their] terms."[89] The judicial power, on the other hand, is limited to "resolving specific disputes between parties as to the applicability of the law to their actions."[90] We respect the constitutional separation of powers by interpreting and applying legislation according to what appears to be the legislature's intent, neither "infer[ring] substantive terms into the text that are not already there" nor taking away from the statutory text by ignoring it or rendering it superfluous.[91]

¶ 41 As we discussed above, the plain language of Utah Code section 76-1-404 indicates a legislative intent to preclude prosecutions by the State following a prosecution of the same offense in another jurisdiction. Thus, the intent of section 404 is to limit the dual sovereignty doctrine in Utah. To interpret the language "same offense" as incorporating the dual sovereignty doctrine would negate the intent of the statute, leaving it entirely superfluous. Indeed, if the statute provides no greater protections than those offered by the federal and Utah constitutions—protections which have long been recognized in our law—it is a pure redundancy. We assume the legislature intended something by enacting section 404, and we assume that intent is expressed in the language of the statute. We have "no power to rewrite [a] statute to conform to an intention not expressed."[92] Despite the policy reasons we pointed to as support for our original interpretation in *Franklin*, it is ultimately not within our power to nullify a statute on policy grounds; indeed, to

---

[87] *See* UTAH CONST. art. VI, § 1(1)–(2).

[88] *Carter v. Lehi City*, 2012 UT 2, ¶ 36, 269 P.3d 141.

[89] *Id.*

[90] *Id.* ¶ 37.

[91] *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (citation omitted).

[92] *Id.* (citation omitted).

do so "would be an unwarranted assumption of legislative authority."[93]

¶ 42 Further, there are policy reasons that favor an expansion of double jeopardy principles. As the United States Supreme Court stated:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.[94]

Double jeopardy principles provide vital protections to individuals, and the legislature's apparent intent to expand such protections beyond the constitutional minimum should be respected. These considerations—separation of powers and double jeopardy principles—are compelling arguments in favor of abandoning our prior interpretation of section 404.

¶ 43 Each of the three factors discussed above weighs in favor of overruling our prior interpretation that section 76-1-404 incorporated the dual sovereignty doctrine. Although we are generally reluctant to overrule precedent, this case is a prime example of a circumstance where revisiting a prior decision is both justified and appropriate. Accordingly, we hereby overrule our holding in *Franklin* that section 76-1-404 is simply "a legislative codification of traditional double jeopardy interpretation,"[95] including the dual sovereignty doctrine.[96] We turn now to the appropriate meaning of that section.

---

[93] *State v. Davis*, 184 P. 161, 165 (Utah 1919) (Thurman, J., concurring).

[94] *Green v. United States*, 355 U.S. 184, 187–88 (1957).

[95] *Franklin*, 735 P.2d at 37.

[96] The court of appeals below briefly noted that section 404 "provide[s] protections that are consistent with traditional double jeopardy principles" and concluded that it did not need to analyze the statute as distinct from the constitutional claims it addressed. *State v. Robertson*, 2014 UT App 51, ¶ 21 n.5, 321 P.3d 1156. Under our

(Continued)

*B. Section 76-1-404's Inclusion of "Same Offense" Incorporates the* Blockburger-Sosa *Test*

¶ 44 Utah Code section 76-1-404 states that "[i]f a defendant's conduct establishes the commission of one or more offenses within the concurrent jurisdiction of this state and of another jurisdiction, federal or state, the prosecution in the other jurisdiction is a bar to a subsequent prosecution in this state if" two conditions are satisfied. First, the prior prosecution must have "resulted in an acquittal, conviction, or termination of prosecution, as those terms are defined in Section 76-1-403." Second, the subsequent Utah prosecution must be "for the same offense or offenses." The central issue in this case is what the legislature meant by "same offense or offenses."

¶ 45 As we recognized in *Franklin*, "[w]hen the legislature uses a word with a well-established legal meaning, we assume that the legislature is aware of that meaning and has used the word in its proper sense."[97] Our determination in *Franklin* that "same offense" was a term of art that had particular meaning in the double jeopardy context is still correct. The legislature's use of the term "same offense" as a specific condition of the protections offered by section 404 "is indicative of the legislature's awareness of double jeopardy terminology and its intent to use that terminology precisely."[98] Indeed, the prior version of section 404, in effect until 1973, stated that a prior "criminal prosecution under the laws of a state, government, or country, founded upon the act or omission in respect to which he is on trial" in Utah was "a sufficient defense."[99] The legislature amended the statute, changing the more general language of "act or omission in respect to which he is on trial" to that of "same offense or offenses," deliberately invoking the double jeopardy term of art. Thus, though we have overruled our narrow conclusion in *Franklin* that the term "same offense" incorporated the dual

---

prior interpretation of the statute, the court was entirely correct in its approach. And as it had no power to review or alter our holding in *Franklin*, it was bound to follow our instruction that section 404 merely codified the dual sovereignty constitutional analysis. Although we depart from our prior interpretation today, we do not fault the court in any way for its application of section 404.

[97] 735 P.2d at 37.

[98] *Id.*

[99] UTAH CODE § 76-1-25 (1972).

sovereignty doctrine, we reaffirm the more general point that "same offense," as used in section 404, is a term of art.

¶ 46 "Generally, absent express direction to the contrary, we presume that a term of art used in a statute is to be given its usual legal definition."[100] Section 404 contains such direction. As has been discussed, the term "same offense" connotes two separate analyses: the *Blockburger-Sosa* test and the dual sovereignty doctrine. It is impossible to incorporate both of these approaches into the statute, however, because incorporation of the dual sovereignty doctrine renders the statute a nullity—both permitting and forbidding subsequent Utah prosecutions for the "same offense"—and ignores the unmistakable legislative intent to limit the dual sovereignty doctrine. Thus, "all but one of the meanings [has been] eliminated by context"[101] and section 404's use of the term of art "same offense" incorporates only the *Blockburger-Sosa* test. We accordingly hold that, under section 404, a court must determine whether a prior foreign prosecution and a subsequent Utah prosecution are for the same offense using the *Blockburger-Sosa* test—whether the two statutory offenses each require proof of a fact that the other does not.

¶ 47 The State urges us to modify the *Blockburger-Sosa* test by looking not only to the elements of the two criminal offenses, but also to the applicable "unit of prosecution." Under the State's approach, "the laws of different sovereigns cannot fairly be considered the 'same'—even if elementally identical in the *Blockburger* sense—if the unit of prosecution of one is different than the other." For the reasons discussed below, however, we disagree. Although the relevant units of prosecution may inform the question of what specific conduct the State is seeking to prosecute the defendant for, and whether that conduct is the same as that for which the defendant has already been prosecuted in another jurisdiction, the fact that two criminal statutes identify two different units of prosecution does not mean that the offenses are different under *Blockburger-Sosa* for purposes of section 404.

¶ 48 "The allowable unit of prosecution for an offense determines whether a perpetrator's conduct constitutes one or more violations of that offense."[102] In essence, the unit of prosecution

---

[100] *Kelson v. Salt Lake Cty.*, 784 P.2d 1152, 1156 (Utah 1989).

[101] *Olsen*, 2011 UT 10, ¶ 13 (citation omitted).

[102] *State v. Rasabout*, 2015 UT 72, ¶ 8, 356 P.3d 1258.

defines the minimum amount of conduct necessary to constitute a single violation of a particular criminal statute. "A unit of prosecution can be either an act or a course of conduct," depending on the relevant statute.[103] We recently explained how units of prosecutions can differ, using the example of child pornography:

> It is a crime to "intentionally . . . view [ ] child pornography." If a perpetrator views multiple images of multiple victims over a period of time, how many times has he committed the offense? Perhaps there is one violation for each viewing session, regardless of the number of images or victims. Or maybe there is one violation for each victim or one for each image. The allowable unit of prosecution provided by the offense resolves this question.[104]

The State argues that, so long as two criminal statutes have different units of prosecution, they can never be considered the "same offense" under section 404.

¶ 49 The problem with this argument is that section 404 looks to whether "a defendant's *conduct* establishes the commission of one or more offenses" that are "the same offense."[105] One statute may employ a different unit of prosecution and thereby measure the conduct necessary to constitute an offense differently than another statute. But even though the statutes measure the relevant conduct differently—such as by measuring the number of victims portrayed in child pornography instead of the number of child pornography images viewed—it may well be the same conduct that is at issue in both prosecutions.

¶ 50 Section 404 requires us to determine whether the defendant has been prosecuted for the same conduct constituting the same offense in another jurisdiction. And while the relevant units of prosecution help inform us as to what specific conduct the defendant was already prosecuted for, they do not answer the question of whether "the subsequent prosecution is for the same offense or offenses."[106] That question is answered by using the *Blockburger-Sosa*

---

[103] *State v. Hall*, 230 P.3d 1048, 1051 (Wash. 2010).

[104] *Rasabout*, 2015 UT 72, ¶ 8 (alterations in original) (citation omitted).

[105] UTAH CODE § 76-1-404 (emphasis added).

[106] *Id.* § 76-1-404(2).

test. An analysis of the units of prosecution and the underlying evidence goes only to the question of whether it is the same conduct at issue in each prosecution. An example from the United States Supreme Court helps to illuminate this principle.

¶ 51 In *Brown v. Ohio*, the Supreme Court had to determine whether the prosecution of a lesser-included offense encompassed the same conduct as was subsequently prosecuted.[107] The defendant, Mr. Brown, had stolen a car on November 29, 1973, and was caught driving the car nine days later, on December 8, 1973.[108] He was first charged with and prosecuted for joyriding—taking or operating a vehicle without the owner's consent—to which he pled guilty and was sentenced to thirty days in jail and a $100 fine.[109] After serving his sentence for joyriding, he was charged with auto theft—joyriding with the intent to permanently deprive the owner of possession—to which he pled guilty on the condition that the court consider his claim of double jeopardy.[110] The court overruled the double jeopardy objection, and the Ohio Court of Appeals affirmed.[111] Although the appellate court recognized that the two offenses were the same under *Blockburger*, it held that the subsequent prosecution was permissible because the prosecutions were based on different acts that occurred on different days—a theft occurring on November 29 and a joyride occurring on December 8.[112] The Supreme Court reversed.

¶ 52 The Court held that the court of appeals was correct in concluding that the two offenses were the same under the traditional *Blockburger* test.[113] It disagreed, however, that the conduct underlying the two charges was different.[114] Because Ohio law defined the relevant unit of prosecution such that "the theft and operation of a single car [was] a single offense," the first conviction

---

[107] 432 U.S. 161 (1977).

[108] *Id.* at 162.

[109] *Id.*

[110] *Id.* at 162–63.

[111] *Id.* at 163.

[112] *Id.* at 163–64.

[113] *Id.* at 168–69.

[114] *Id.* at 169.

for joyriding necessarily included the same conduct at issue in the second, for auto theft.[115] The Court noted that the case would be different "if the Ohio Legislature had provided that joyriding is a separate offense for each day in which a motor vehicle is operated without the owner's consent,"[116] i.e., if the relevant unit of prosecution narrowly defined the conduct necessary to establish an offense so that the charge of joyriding did not encompass all of the relevant criminal conduct. The same type of analysis applies under section 76-1-404.

¶ 53 Accordingly, section 404 requires courts to analyze two separate issues to determine whether the statute prohibits a subsequent Utah prosecution: first, whether the offenses are the same under *Blockburger-Sosa*. If not, then section 404's protections do not apply. But if so, the court must also determine whether the conduct for which the defendant is being prosecuted in Utah is the same conduct that was at issue in the prior foreign prosecution. To answer this question, the court must look at the relevant units of prosecution, which define the chargeable conduct, and the evidence supporting the prosecutions. If the other jurisdiction's unit of prosecution defines the offense in such a way that the evidence relied upon to prove the criminal conduct in that jurisdiction encompasses the evidence necessary to prove the criminal conduct at issue in the Utah prosecution, section 404 prohibits the subsequent Utah prosecution.[117]

¶ 54 Ultimately, in cases implicating section 404, the question is whether the conduct for which the defendant was prosecuted in the other jurisdiction constitutes the "same offense" both elementally (*Blockburger-Sosa*) and factually (relevant units of prosecution supported by evidence). When a defendant seeks dismissal under section 404—as does Mr. Robertson—he or she must demonstrate that the elements of the statute have been satisfied. To show that

---

[115] *Id.*

[116] *Id.* at 169 n.8.

[117] We note that the section 404 analysis does not need to be done in this particular order, i.e., first *Blockburger-Sosa*, then an analysis of the conduct, as informed by the units of prosecution and evidence. If a court can determine that different conduct is at issue in the two prosecutions, then section 404 does not apply at all and there is no need to also determine whether the offenses can be considered the same under *Blockburger-Sosa*. The reverse is also true.

prosecutions are the "same offense" *factually*—that is, based on the same conduct—a defendant may rely on evidence from all aspects of the record in the previous and subsequent prosecutions, including any available information relating to the indictment, notices of forfeiture, a plea colloquy, or sentencing. We turn now to whether and how we should apply this test to the facts of this case.

### III. Section 76-1-404 Prohibits the State's Subsequent Prosecution of Mr. Robertson

¶ 55 Prior to deciding whether section 76-1-404 prohibits the State's prosecution of Mr. Robertson, we must first address the State's argument that our decision to overrule *Franklin* should be applied prospectively only. We conclude that section 404 is a substantive statute that creates an affirmative defense to avoid the dual sovereignty exception to double jeopardy[118] and that the new interpretation of it announced in this case applies retroactively to cases on direct and collateral review.[119] We then apply our interpretation of section 404 to the facts of this case. We hold that the federal and state offenses are the same under *Blockburger-Sosa* and that the record shows that federal prosecution encompassed all of the conduct for which Mr. Robertson was subsequently prosecuted by the State.

*A. Section 76-1-404 Is a Substantive Statute that Creates an Affirmative Defense to Avoid the Dual Sovereignty Exception to Double Jeopardy, and We Apply It Retroactively to Cases on Direct and Collateral Review*

¶ 56 Mr. Robertson asks us to retroactively apply section 404 "as written" in both "this case and all non-final cases." Though we have established general rules governing the retroactive application of

---

[118] As concluded above, section 404 provides broader protections than traditional double jeopardy principles as it limits the dual sovereignty doctrine in Utah. Accordingly, section 404's right to avoid double jeopardy is distinct from and more robust than the constitutional rights protected under the federal and state constitutions.

[119] Though the interpretation we adopt today applies retroactively to cases on direct and collateral review, this retroactivity does not override the rules that govern how an issue is preserved and presented on appeal or collateral review.

statutes,[120] we conclude that these rules do not control our inquiry. For in asking us to apply section 404 "as written," Mr. Robertson asks for retroactive application of our new interpretation of the statute announced in this case. In *State v. Franklin*,[121] we interpreted the statute in a manner that misunderstood the legislature's intent. Now, in this decision, we correct that misunderstanding by overruling *Franklin* and interpreting section 404 according to its plain language, which indicates a legislative intent to preclude prosecutions by the State following a prosecution for the same offense in another jurisdiction. Thus, to determine whether we can retroactively apply our interpretation of section 404, we cannot rely on statutory retroactivity law, but must look to our retroactivity jurisprudence dealing with new rules of criminal law announced in judicial decisions.

¶ 57 As discussed below, we have not yet adopted a specific rule governing the retroactive application of new interpretations of substantive criminal statutes. After consulting the approaches taken by federal courts and our sister jurisdictions, we conclude that a new interpretation of a substantive criminal statute will apply retroactively to cases on direct and collateral review. We therefore apply our interpretation of section 404 to Mr. Robertson. We discuss each issue in turn.

¶ 58 Our recent retroactivity jurisprudence clarifies that whether a new rule of criminal law can be retroactively applied turns on whether it is procedural or substantive. In prior cases, we have almost exclusively addressed the retroactive application of "new rules of criminal procedure announced in judicial decisions."[122] As to such rules, we have held that they "apply retroactively to all cases pending on direct review."[123] We have also permitted such rules to apply retroactively to final cases on collateral review under certain circumstances.[124] As for new rules of substantive criminal law announced in judicial decisions—such as an interpretation of a

---

[120] *See Beaver Cty. v. State Tax Comm'n*, 2010 UT 50, ¶ 10, 254 P.3d 158.

[121] 735 P.2d 34 (Utah 1987).

[122] *State v. Guard*, 2015 UT 96, ¶¶ 36–37, 371 P.3d 1.

[123] *Id.* ¶ 61.

[124] *See, e.g.*, *Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902, 912 (Utah 1993); *Winward v. State*, 2015 UT 61, ¶ 11, 335 P.3d 1022.

substantive criminal statute—we have not adopted a specific rule governing retroactive application.[125]

¶ 59 Because Mr. Robertson asks us to retroactively apply the interpretation of section 404 announced in this decision—an interpretation that recognizes the legislature's intent to reject the dual sovereignty doctrine and provide broader protections to criminal defendants than we recognized in *Franklin*[126]—we must adopt a rule governing the retroactive application of new interpretations of substantive criminal statutes. For as we read section 404, it is not merely a procedural statute that defines the "mode or form of procedure for enforcing substantive rights,"[127] but a substantive statute that defines "what acts constitute crimes and what the elements of those crimes are" as well as the availability and definitions of affirmative defenses.[128] In particular, it creates an affirmative defense that a criminal defendant—like Mr. Robertson—can invoke as a complete bar to prosecution by the State when he or she has previously been prosecuted for the same offense by a foreign sovereign.

¶ 60 And in articulating a rule of retroactivity governing new rules of substantive criminal law, we are guided by federal precedents and the approaches taken by our sister jurisdictions. Significant in this regard is *Bousley v. United States*.[129] In that case, the United States Supreme Court considered whether to retroactively apply its *Bailey v. United States*[130] interpretation of the "use" prong of 18 U.S.C. section 924(c)(1). That prong imposes enhanced penalties

---

[125] We note that in *Andrews v. Morris*, 677 P.2d 81 (Utah 1983), and *State v. Lovell*, 2005 UT 31, 114 P.3d 575, we retroactively applied our interpretations of certain criminal statutes to defendants. These cases predate *Guard*, and in them, we failed to consider whether the statutes at issue were procedural or substantive for purposes of our retroactivity analysis. We therefore view these cases as part of our previous approach to retroactivity jurisprudence and do not rely on them to resolve the issue now before us.

[126] 735 P.2d 34.

[127] *State v. Drej*, 2010 UT 35, ¶ 27, 233 P.3d 476 (citation omitted).

[128] *Id.* ¶ 18.

[129] 523 U.S. 614 (1998).

[130] 516 U.S. 137 (1995).

for the "use" of a firearm in relation to certain crimes.[131] In *Bailey*, the Court interpreted the statute to punish only "active employment of the firearm," not "mere possession."[132]

¶ 61 In deciding whether to retroactively apply this interpretation of the statute to a defendant who was before the Court on collateral review, the *Bousley* Court reasoned that "decisions of [the Supreme Court] holding that a *substantive federal criminal statute* does not reach certain conduct" are new *substantive rules*.[133] The Court then held that decisions interpreting substantive criminal statutes should be applied retroactively because they demonstrate "a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'"[134] For "it is only Congress," the Court noted, "and not the courts, which can make conduct criminal."[135] Ultimately, it declined to retroactively apply *Bailey*'s interpretation to the defendant on collateral review because of a procedural defect in his claim,[136] but this case illustrates that the Supreme Court retroactively applies new *substantive rules* to all cases, including those on collateral review.

¶ 62 State courts have generally adopted two different responses to *Bousley*. A majority of our sister jurisdictions follow *Bousley* in granting a new substantive rule—including a new interpretation of a substantive criminal statute—full retroactivity, applying it on direct and collateral review.[137] At least one of these states presumptively

---

[131] *See* 18 U.S.C. § 924(c)(1) (1994).

[132] *Bailey*, 516 U.S. at 144.

[133] *Bousley*, 523 U.S. at 620 (emphasis added).

[134] *Id.* (citation omitted); *see also Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) ("A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." (citing *Bousley*, 523 U.S. at 620–21)).

[135] *Bousley*, 523 U.S. at 620–21.

[136] *Id.* at 621 (noting that "a voluntary and intelligent plea of guilty made by an accused person . . . may not be collaterally attacked" and that "[defendant] contested his sentence on appeal, but did not challenge the validity of his plea," thus "procedurally default[ing] the claim he now presses on us").

[137] *See, e.g., State v. Towery*, 64 P.3d 828, 831 (Ariz. 2003) (en banc) (concluding that "[p]etitioners whose cases have become final may seek the benefit of new substantive rules"); *In re Moore*, 34 Cal. Rptr.

(Continued)

requires retroactivity in all cases, including those that have become final, but will not grant relief when continued incarceration does not represent a gross miscarriage of justice.[138] A minority of states, in

---

3d 605, 609 (Cal. Ct. App. 2005) (noting that "new substantive rules generally apply retroactively"); *People v. Wenzinger*, 155 P.3d 415, 419 (Colo. App. 2006) (noting that "new substantive rules generally apply retroactively to cases that are final, whereas new procedural rules do not"); *Luke v. Battle*, 565 S.E.2d 816, 819 (Ga. 2002) (noting that "a new rule of substantive criminal law must be applied retroactively to cases on collateral review," and that "an appellate decision holding that a criminal statute no longer reaches certain conduct is a ruling of substantive law"); *People v. Edgeston*, 920 N.E.2d 467, 471 (Ill. App. Ct. 2009) ("Illinois follows the federal rule that a decision that narrows a substantive criminal statute must have full retroactive effect in collateral attacks." (citation omitted)); *Jacobs v. State*, 835 N.E.2d 485, 489–91 (Ind. 2005) (adopting the federal rule that a new substantive rule of criminal law applies retroactively to cases on collateral review); *State v. Whitehorn*, 50 P.3d 121, 127–28 (Mont. 2002) (same); *Commonwealth v. Spotz*, 896 A.2d 1191, 1243 (Pa. 2006) (noting that "we distinguish between new rulings involving substantive criminal law, which are applied retroactively on collateral review, and new procedural rulings of constitutional dimension, which are generally subject only to prospective application"); *State v. White*, 944 A.2d 203, 208 (Vt. 2007) (noting that "[g]enerally, new rules of criminal procedure are not applied retroactively on collateral review because unlike new substantive rules, they do not produce a class of wrongly convicted individuals"); *Kelson v. Commonwealth*, 604 S.E.2d 98, 101 (Va. Ct. App. 2004) (noting that "[a]s to convictions that are already final, . . . [new] *substantive* rules generally apply retroactively"(alterations in *Kelson*) (quoting *Schriro*, 542 U.S. at 351)); *State v. Lagundoye*, 674 N.W.2d 526, 531 (Wis. 2004) (noting that "a new rule of substantive criminal law is presumptively applied retroactively to all cases, whether on direct appeal or on collateral review").

[138] *Luurtsema v. Comm'r of Corr.*, 12 A.3d 817, 832 (Conn. 2011) ("[W]e adopt a general presumption in favor of full retroactivity for judicial decisions that narrow the scope of liability of a criminal statute. That presumption, however, would not necessarily require that relief be granted in cases where continued incarceration would not represent a gross miscarriage of justice, such as where it is clear

(Continued)

contrast, employ a balancing test to determine whether to retroactively afford defendants the benefit of a new substantive rule.[139]

¶ 63 We are persuaded by *Bousley* and the majority of our sister jurisdictions to adopt a rule of full retroactivity—applying to cases on both direct and collateral review—for a new interpretation of a substantive criminal statute. Like the United States Supreme Court, we recognize that "it is only [the legislature], and not the courts, which can make conduct criminal."[140] Accordingly, when our interpretation of a substantive criminal statute deviates from the intent of the legislature—as it did in *Franklin*—there is "a significant risk that a defendant stands convicted" despite the fact that the legislature intended an affirmative defense to bar the prosecution.[141]

¶ 64 Thus, we hold that new interpretations of substantive criminal statutes have automatic full retroactivity, subject of course

---

that the legislature did intend to criminalize the conduct at issue, if perhaps not under the precise label charged.").

[139] *Clem v. State*, 81 P.3d 521, 530–31 (Nev. 2003) ("[W]hen a constitutional rule qualifies as 'new,' it will apply retroactively in only two instances: '(1) if the rule establishes that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense; or (2) if it establishes a procedure without which the likelihood of an accurate conviction is seriously diminished.' Therefore, on collateral review . . ., if a rule is not new, it applies retroactively; if it is new, but not a constitutional rule, it does not apply retroactively; and if it is new and constitutional, then it applies retroactively only if it falls within one of [the] delineated exceptions." (citation omitted)); *Policano v. Herbert*, 859 N.E.2d 484, 495–96 (N.Y. 2006) ("[W]e must weigh three factors to determine whether a new precedent operates retroactively: the purpose to be served by the new standard; the extent of the reliance by law enforcement authorities on the old standard; and the effect on the administration of justice of a retroactive application of the new standard. The second and third factors are, however, only given substantial weight 'when the answer to the retroactivity question is not to be found in the purpose of the new rule itself.'" (citation omitted)).

[140] *Bousley*, 523 U.S. at 620–21.

[141] *Id.* at 620.

to our law of preservation.[142] Defendants seeking collateral review must abide by the Post-Conviction Remedies Act[143] in seeking to have our new interpretation of a statute applied to them. We therefore conclude that Mr. Robertson will receive the benefit of our new interpretation of section 404 announced in this decision today—as will other criminal defendants on direct or collateral review who meet the requirements of our law of preservation and the PCRA. We turn now to the application of section 404 to Mr. Robertson's case.

*B. The Record Shows that the State Premised Its Prosecution of Mr. Robertson on Conduct that Constitutes the "Same Offense" for Which He Was Prosecuted Federally*

¶ 65 As discussed, Utah Code section 76-1-404 prohibits the State from prosecuting a defendant if the defendant has already been prosecuted in another jurisdiction provided two conditions are satisfied. First, "the former prosecution [must] result[] in an acquittal, conviction, or termination of prosecution."[144] The parties agree that Mr. Robertson's federal prosecution satisfies this requirement. The second condition requires that "the subsequent prosecution [be] for the same offense or offenses,"[145] as we have described above. It is on this condition that the parties disagree—whether the Utah prosecution can be said to be for the "same offense" as the federal prosecution.

¶ 66 As we have explained, determining whether a prior foreign prosecution qualifies as the "same offense" under section 404 requires a two-part analysis: whether the offenses for which an individual was prosecuted are the same under *Blockburger-Sosa* and, if they are, whether the conduct establishing the offenses is also the same. In this case, there is no dispute that the two relevant statutes are the "same offense" under a *Blockburger-Sosa* analysis. Mr.

---

[142] We do not reach the question whether there may be some exception to the general rule we adopt today. *See, e.g.*, *Luurtsema*, 12 A.3d at 832 (adopting a "general presumption in favor of full retroactivity for judicial decisions that narrow the scope of liability of a criminal statute," but denying retroactive application of a new rule of substantive criminal law where such a denial did not constitute a "gross miscarriage of justice").

[143] *See* UTAH CODE §§ 78B-9-101 to -405.

[144] UTAH CODE § 76-1-404(1).

[145] *Id.* § 76-1-404(2).

Robertson was charged in both federal and state court with possession of child pornography. The federal child pornography statute, 18 U.S.C. section 2252A(a)(5)(B) (2008), criminalizes the "knowing[] possess[ion]" of "any . . . material that contains an image of child pornography that has been . . . transported using any means or facility of interstate or foreign commerce." The equivalent Utah statute, section 76-5a-3 (2004),[146] makes it a crime to "knowingly . . . possess[] . . . child pornography." The definition of "child pornography" is the same under both statutes.[147] And though the federal offense requires proof of an element that the Utah statute does not—interstate commerce—the Utah statute does not require proof of an element that the federal statute does not. Thus, the Utah crime is a lesser-included offense of the federal offense, rendering it the "same offense" under a *Blockburger-Sosa* analysis.

¶ 67 We must next determine whether the prosecutions were based on the same conduct. If they are not, then the State is free to prosecute based on any previously uncharged criminal conduct. This analysis, as we described above, is informed by the relevant units of prosecution. Under federal law, the unit of prosecution "is each 'material,' or medium, containing an image of child pornography."[148] The unit of prosecution under Utah law is "each minor depicted in the child pornography" and "each time the same minor is depicted in different child pornography."[149] With these units of prosecution in mind, we must determine whether the evidence supporting the prosecuted criminal conduct in the federal case encompasses the evidence supporting the prosecuted criminal conduct in the Utah case.

¶ 68 The State argues that because Mr. Robertson was charged with only one count of violating the federal statute, he was federally prosecuted only for possessing one medium containing child pornography—the federal unit of prosecution. The State claims that the medium that served as the basis for the federal prosecution was the Dell computer because the Utah agent provided the federal

---

[146] The statute has since been renumbered without substantive change to 76-5b-201(1).

[147] *See* 18 U.S.C. § 2256(8) (2008); UTAH CODE § 76-5a-2(1) (2004).

[148] *United States v. Woerner*, 709 F.3d 527, 540 (5th Cir. 2013) (citation omitted).

[149] UTAH CODE § 76-5b-201(3).

attorney with videos solely from that computer during the federal screening process. So because Mr. Robertson owned several media containing child pornography—two computers and several other storage devices—the State argues that it is free to prosecute him for possessing the child pornography contained in the other media. Although we agree that were the federal prosecution truly limited to prosecuting Mr. Robertson's possession of child pornography on one computer, section 404 would not prohibit the subsequent state prosecution, we disagree that the federal prosecution was so limited.

¶ 69 The one-count federal indictment returned by the grand jury charged Mr. Robertson with knowing possession of multiple media—"computer *disks* and other *materials* containing images of child pornography." The forfeiture notice included with the indictment stated that all of the media—not just the one computer—were used "to commit and to facilitate the commission of [the] violation" of the federal child pornography statute. Thus, though the federal indictment could have rested solely on Mr. Robertson's possession of one medium containing child pornography, it appears that the prosecution was based on his possession of multiple media, with no distinction made between any of the various media. Indeed, the trial court in the Utah case specifically determined that this was the case, finding that the Utah prosecution—which charged Mr. Robertson with multiple counts of possession of child pornography based on images found on both computers—was "[b]ased on the *same body of evidence*" as the previous federal prosecution. Because the federal prosecution was based on evidence of Mr. Robertson's possession of all the media containing child pornography, it encompassed the evidence of the conduct that was at issue in the Utah prosecution. Therefore, the two prosecutions were for the same conduct.

¶ 70 In sum, the federal and Utah criminal statutes constitute the "same offense" under *Blockburger-Sosa*. The evidence of criminal conduct supporting the federal prosecution encompassed the evidence of criminal conduct used to support the subsequent Utah prosecution. Thus, Mr. Robertson was prosecuted for the same conduct, constituting the "same offense," twice. Accordingly, section 76-1-404 bars the State's subsequent prosecution of Mr. Robertson. We therefore reverse the decision of the court of appeals.

## Conclusion

¶ 71 Our conclusion in *State v. Franklin* that Utah Code section 76-1-404's use of "same offense" incorporated the dual sovereignty doctrine is overruled. The language of the statute unmistakably

operates as a legislative rejection of the dual sovereignty doctrine. We accordingly clarify today that section 404's use of "same offense" encompasses only the *Blockburger-Sosa* test. Thus, section 404 prohibits Utah prosecutions following prosecutions in other jurisdictions so long as the offenses are the same under *Blockburger-Sosa* and the conduct at issue in the previous prosecution encompasses the same conduct at issue in the Utah prosecution, as informed by the relevant units of prosecution and evidence. The interpretation of section 404 that we announce today applies retroactively and, applying this interpretation to Mr. Robertson's case, we hold that section 404 prohibited the State from prosecuting him after the federal prosecution. We therefore reverse the court of appeals' decision.

———————